Sergio Bent, Bar No. 180662
Steven M. Kroll, Bar No. 216916
BENT CARYL & KROLL, LLP
6300 Wilshire Boulevard, Suite 1415
Los Angeles, California 90048
Telephone: (323) 315-0510
Facsimile: (323) 774-6021
sbent@bcklegal.com
skroll@bcklegal.com

Attorneys for Defendants
Faizon Love (erroneously sued as
Langston Faizon Santisma) and
Assembly Robot, Inc. (erroneously
sued as Dough Boy, Inc.)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHIANA LUKE,<br><br>Plaintiff,<br><br>v.<br><br>DOUGH BOY, INC.; LANGSTON FAIZON SANTISMA a/k/a FAIZON ANDRE LOVE, individually,<br><br>Defendants. | CASE NO. 2:18-cv-07456-ODW-GJS<br>[Assigned to Judge Otis D. Wright]<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF**<br><br>Date:  December 16. 2010<br>Time:  1:30 P.M.<br>Ctrm:  5D (First Street Courthouse)<br>Judge: Hon. Otis D. Wright<br><br>Action filed: 8/24/18<br>Trial date:   3/20/20 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises out of plaintiff Tashiana Luke's ("Plaintiff") alleged former employment with defendant Assembly Robot, Inc. ("Assembly") as an assistant to defendant Faizon Love ("Love") and writer.

Plaintiff sues Assembly Robot and Love for four causes of action arising under the California Fair Employment & Housing Act (the "FEHA"). However, partial summary judgment should be granted as to Plaintiff's causes of action for discrimination, failure to prevent and retaliation because neither defendant is considered an employer under the FEHA. Further, partial summary judgment should be granted as to Plaintiff's cause of action for sexual harassment because the complained-of conduct was not severe or pervasive. Lastly, partial summary judgment should be granted as to Plaintiff's causes of action for discrimination, retaliation and failure to prevent against Love because there is no individual liability for those causes of action as a matter of law. Thus, Defendants' motion for summary judgment should be granted.

## II. STATEMENT OF FACTS

### A. The Parties

Assembly Robot, Inc. ("Assembly") is a California corporation in the business of providing entertainment services. UMF1. Faizon Love ("Love") is an individual who works as an actor and comedian. UMF2. Love is Assembly's sole shareholder, director and officer. UMF3.

Since its incorporation in 2015, Assembly has never regularly employed more than five employees. UMF4. In 2016, Assembly employed less than five employees. UMF5.

Love has never regularly employed more than five employees. UMF6. In 2016, Love employed less than five employees. UMF7.

### B. Plaintiff and Love's Prior Working Relationship

Luke and Love first met in October 2015 when Plaintiff worked as a production assistant on the set of Real Husbands of Hollywood ("RHOH"), a television show on which Love was a cast member. UMF8. Luke's job duties on RHOH included, among other things, assisting cast members. UMF9.

Luke wrote a reality show about strippers called "Cashing Out." UMF10. Luke informed other production assistants and cast members on RHOH about "Cashing Out." UMF11.

Luke observed nudity while on the set of RHOH. UMF12. Luke understood she might see nudity on the set as a production assistant. UMF13.

### C. Plaintiff's Employment with Defendants

After RHOH wrapped, Love asked Luke if she had found employment and if she wanted to work as his personal assistant. UMF14. Before accepting the position, Luke understood Love might use profanity. UMF15. Before accepting the position, Luke understood Love might make reference to sexual material as part of his work. UMF16. Plaintiff accepted Love's employment offer and she started her employment on or about June 9, 2016. UMF17. As Love's assistant, Luke's job duties included scheduling meetings and bookings for Love, making travel accommodations for Love, and setting up for Love's guest appearances. UMF18.

Shortly after starting her position, Love asked Luke about working as a writer and helping with the casting of a parody that he wanted to shoot of him doing a pornographic film. UMF19. Luke did not have an issue with being asked to be a writer on the parody of the pornographic film. UMF20. Love did not inform Luke of what scenes would be included in the parody during their discussion of the project. UMF21. Luke did not ask Love about what scenes would be included in the parody during their discussion of the project. UMF22. Luke understood the scene she would be writing for the parody would involve Love having parody sex. UMF23. Luke thought Love's idea of the parody of a pornographic film would be

- 3 -

funny. UMF24.

At the time Love spoke to Luke about the parody, one of Luke's goals was to write romantic comedies and reality television. UMF25. Luke understood that romantic comedies include content of a sexual nature and could include nudity. UMF26. Luke understood that as a writer she would be expected to have input regarding test scenes. UMF27.

Luke understood that test scenes involve cast acting out what is going on in the scenes. UMF28. Luke understood it would be important for her as a writer to review test scenes because it would contribute to the material that she would be writing. UMF29. Luke understood that with respect to test scenes, she would have the opportunity to say "yeah" or "nay" as to whether they were the direction in which the project should proceed. UMF30. Luke understood that Love could cast for the parody without her approval. UMF31. Luke understood that Love could shoot test scenes without her knowledge or approval. UMF32. Luke understands that pornographic films include nudity. UMF33.

### D. Plaintiff's Allegations of Inappropriate Conduct

#### 1. Tuition Comment

Luke alleges that during her employment, Love acted inappropriately toward her by stating "you know you need your tuition paid." UMF34. Luke cannot recall whether the tuition comment was made in person, the date it was made or where Love was when he made the comment. UMF35. Although Luke took the comment about the tuition to be sexual, she admits that Love did not use any sexual language or profanity when he made the comment. UMF36.

#### 2. Outfit Comment

Luke alleges Love acted inappropriately toward her by looking her up and down while making a noise with his mouth and making a comment about how she looked in an outfit while they were at Roscoe's restaurant. UMF37. Luke cannot remember the words Love used when commenting about how she looked in the

- 4 -

outfit. UMF38. Love did not use any profanity and did not say anything sexual when commenting about how Luke looked in the outfit. UMF39.

### 3. *Jean's Comment*

Luke alleges Love acted inappropriately toward her by commenting on how her jeans looked on her. UMF40. Luke cannot recall Love's specific comment about the jeans. UMF41. Luke cannot recall whether Love used profanity or made any lewd comments related to her jeans. UMF42.

### 4. *Explicit Test Scene*

Luke alleges Love acted inappropriately toward her by sending her a text message on June 25, 2016 that read "I shot a test scene what do you think," which included a video of Love receiving oral sex. UMF43. The video Love sent to Luke on June 25, 2016 was a test scene for the parody of a pornographic film he had discussed with Luke. UMF44. Love sent the same text message to other possible collaborators for their input on the test scene. UMF45.

### 5. *Plaintiff did not Complain of Sexual Harassment*

Luke quit her employment on or about June 25 or 26, 2016 after receiving the June 25, 2016 text message from Love. UMF46. Luke did not complain to anyone she knew to be an employee, supervisor or manager of Love about the alleged tuition comment, about the outfit comment, or about the jeans comment. UMF47. Luke admitted she did not complain of sexual harassment between June 9 and June 26, 2016 although her DFEH complaint states that she complained and opposed sexual harassment between June 9 and June 26, 2019. UMF48. Luke did not think that Love was romantically or sexually interested in her. UMF49.

### E. **Plaintiff's Separation of Employment**

Before receiving Love's June 25, 2016 text message containing the test scene, Luke had already planned an exit strategy because she was bothered by Love not showing up for scheduled appearances. UMF50.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita*, 475 U.S. at 587.

## IV. ARGUMENT

### A. **Plaintiff Cannot Establish Defendants Are Employers For Purposes of her First, Third and Fourth Causes of Action**.

The Fair Employment and Housing Act (the "FEHA") prohibits an employer from discriminating and retaliating against employees. Cal. Gov. Code § 12940. Plaintiff alleges Assembly Robot and Love were both employers within the meaning of the FEHA. *See,* e.g., Complaint ¶¶ 15, 37, 41, 44, 47.

With respect to discrimination and retaliation, the FEHA defines "employer" as "any person regularly employing five or more persons." Cal. Gov. Code § 12926(d); *Jennings v. Marralle* (1994) 8 Cal.4th 121, 130. "Regularly employing" is defined as "employing five or more individuals for any part of the day on which the unlawful conduct allegedly occurred, or employing five or more employees on a regular basis." Cal. Code Regs. title 2, § 11008(d)(1). "Regular basis" refers to the nature of a business that is recurring, rather than constant. Cal. Code Regs. title 2, § 11008(d)(A).

Here, Assembly Robot does not currently, nor has it ever employed five or more employees on any basis since its incorporation in 2015. UMF4. Likewise, Love does not currently, nor has he ever employed five or more employees on any basis, including the time period Plaintiff alleges she was employed by him individually. UMF6.

It is undisputed that Assembly Robot and Love are not employers for purposes of Plaintiff's first, third and fourth causes of action for discrimination, failure to prevent discrimination and harassment, and retaliation, respectively. UMFS 3-7. Accordingly, Defendants are entitled to judgment in their favor on Plaintiff's first cause of action for discrimination, third cause of action for failure to prevent discrimination and fourth cause of action for retaliation.

///

### B.     <u>Plaintiff's Second Cause of Action for Harassment Against Defendants Fails</u>

To state a prima facie case for "hostile environment" sexual harassment under either Title VII or the FEHA, plaintiff must allege that (1) she was subjected to unwelcome sexual advances, conduct or comments; (2) the harassment complained of was based on sex; and (3) the harassment was "so severe or pervasive" as to "alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson* (1986) 477 U.S. 57, 67; *see also Fisher v. San Pedro Peninsula Hosp*. (1989) 214 Cal.App.3d 590, 608 (adopting federal case law for hostile environment sexual harassment claims under California law).

To be pervasive the, offensive conduct must consist of "more than a few isolated incidents." *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279. For an isolated offensive act to impose liability it must be severe in the extreme. *Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142 (the employer allowed the posting of a sexually explicit piece of art depicting the employee); *Haberman v. Cengage Learning, Inc*. (2009) 180 Cal.App.4th 365; Hughes v. Pair (2009) 46 Cal.App.4th 1035, 1048-1051 (boorish behavior insufficient to meet test under Civ. Code § 51.9). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." *Clark County Sch. Dist. v. Breeden* (2001) 532 U.S. 268, 271; *Etter v. Veriflo Corp.* (1998) 67 Cal.App.4th 457, 464-467 ("occasional, sporadic, or isolated" offensive acts are not actionable.) Isolated incidents, to be unlawful, generally must include either physical violence or the threat thereof. *Ellison v. Brady* (9th Cir. 1991) 924 F.2d 872, 877-878 (a forcible rape might be sufficiently severe); *Department of Corrections v. State Personnel Bd.* (1997) 59 Cal.App.4th 131 (corrections officer used profane language and shook female fellow officer by her collar to emphasize

his point).

Here, Plaintiff cites to four instances where she alleges Love engaged in inappropriate conduct or made inappropriate comments. As to three of those instances – the tuition comment, the outfit comment and the jeans comment – Plaintiff's testimony regarding those incidents is fatally non-specific. For example, Plaintiff could not remember *any* pertinent details about the alleged instances such as the words Love allegedly used. UMFS 35, 38, 41-42. Moreover, the generalities to which Luke points show that the alleged comments about the tuition, outfit and jeans were not sexual on their face. In fact, as it pertains to the tuition and outfit comments, Plaintiff admitted at her deposition that Love *did not* use profanity or say anything sexual. UMFS 36, 39. As to the tuition comment, Luke admitted she did not recall whether Love said anything profane or lewd. UMF36.

In view of these facts, Plaintiff's testimony itself supports that these incidents were, isolated and fairly innocuous remarks that fail to rise to the necessary standard of severe or pervasive misconduct. *Merrick v. Farmers Ins. Group* (9th Cir. 1990) 892 F.2d 1434, 1438 ("stray" remarks are insufficient to establish discrimination); *Lyle v. Warner Brothers Television Productions*, *supra*, 38 Cal.4th at 283 (annoying or "merely offensive" comments in the workplace are not actionable).

This leaves Plaintiff's allegation that Love's sending of the test scene constitutes sexual harassment.

Plaintiff assumes the video automatically rises of the level of actionable sexual harassment simply because of its sexual content. However, that is *not* the law. The use of sexually coarse and vulgar language in the workplace is not actionable *per se*. As explained by the California Supreme Court in *Lyle*:

> The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." [Citation.] ... [T]hat inquiry requires careful consideration of the social context in which particular

- 9 -

> behavior occurs and is experienced by its target.... The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish between simple teasing or roughhousing ... and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Lyle v. Warner Brothers Television Productions*, *supra*, 38 Cal.4th at 283.

Applied here, Plaintiff has failed to allege conduct that constitutes severe or pervasive sexual harassment as a matter of law. Simply put, the undisputed facts do not support that Love's sending of the test scene to Plaintiff constitutes actionable sexual harassment. First, Plaintiff accepted the job with Love as his assistant knowing he used vulgar language in his act. UMF15. Second, Plaintiff agreed to work as Love's assistant and to write scenes for his upcoming project, which he explained to her was a parody of a *pornographic* film. UMFS19-33. Third, Plaintiff admits that she understood pornographic films typically involve sex acts. UMFS19-33. So, by extension, because Plaintiff knew and understood the nature of pornographic films, Plaintiff also reasonably understood that the project she agreed to work on could involve nudity and other material of a sexual or pornographic nature. UMFS23,33. Fourth, Plaintiff also understood that in her writer's role, she would be expected to view test scenes and had done so in the past. UMFS19-33. Finally, Luke admits that she did not think that Love was romantically or sexually interested in her. UMF49.

When viewed in its totality, the facts and circumstances here support that, much like the plaintiff in *Lyle v. Warner Bros. Television Productions*, the work Plaintiff agreed to do for Love clearly contemplated the use and/or viewing of material of a sexual and/or pornographic nature. Based upon this, it would be entirely reasonable for Love to send Plaintiff a test scene for the pornographic

parody project that contained sexual content.  In addition, as Luke did not believe that Love was interested in her either romantically or sexually (UMF49), this further bolsters that Love's sending her the test scene was strictly for creative purposes related to the project.  Accordingly, similar to the findings of the Court in *Lyle*, the isolated incident of which Plaintiff complains herein should not be considered "surprising nor unreasonable from a creative standpoint" and simply does not rise to the level of severe or pervasive harassment.  38 Cal.4th at 287.

### C. **Plaintiff's First, Third, and Fourth Causes of Action for Discrimination, Failure to Prevent, and Retaliation Against Love Fail as a Matter of Law Because the FEHA Does Not Impose Individual Liability**

Plaintiff asserts her first cause of action for discrimination, her third cause of action for failure to prevent and her fourth cause of action for retaliation against both Assembly Robot and Love.  Notwithstanding, as asserted against Love, each of these claims suffer a fatal flaw.  The law is settled.  Individual managers cannot be held personally liable for discrimination or retaliation claims under the FEHA.  *Reno v. Baird* (1998) 18 Cal. 4th 640, 663; *Janken v. GM Hughes Elecs*. (1996) 46 Cal. App. 4th 55, 80.  Thus, Plaintiff's first, third, and fourth causes of action against Love fail on these additional grounds.

///
///
///

## V. CONCLUSION

For the foregoing reasons, this Court should enter summary judgment in favor of Defendants against Plaintiff.

Dated: November 7, 2019

BENT CARYL & KROLL, LLP

By: /s/ *Sergio Bent*
Sergio Bent
Steven M. Kroll
Attorneys for Defendants
Faizon Love (erroneously sued as Langston Faizon Santisma) and Assembly Robot, Inc. (erroneously sued as Dough Boy, Inc.)

## PROOF OF SERVICE

I, Christopher McBride, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 6300 Wilshire Boulevard, Suite 1415, Los Angeles, California 90048. On November 7, 2019, I served a copy of the within document(s):

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed Overnite Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an Overnite Express agent for delivery.

☒ by ensuring the document(s) listed above were uploaded to the CM/ECF Court system.

Nathaniel N. Peckham, Esq.
DEREK SMITH LAW GROUP, PLLC
1845 Walnut Street, Suite 1601
Philadelphia, PA 19103
Tel: (215) 391-4790
*Counsel for Plaintiff*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on November 7, 2019, at Los Angeles, California.

/s/ *Christopher McBride*
Christopher McBride

BENT CARYL &
KROLL, LLP
ATTORNEYS AT LAW