Sergio Bent, Bar No. 180662
Steven M. Kroll, Bar No. 216916
BENT CARYL & KROLL, LLP
6300 Wilshire Boulevard, Suite 1415
Los Angeles, California  90048
Telephone:   (323) 315-0510
Facsimile:    (323) 774-6021
sbent@bcklegal.com
skroll@bcklegal.com

Attorneys for Defendants
Faizon Love (erroneously sued as
Langston Faizon Santisma) and
Assembly Robot, Inc. (erroneously
sued as Dough Boy, Inc.)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHIANA LUKE,<br><br>           Plaintiff,<br><br>     v.<br><br>DOUGH BOY, INC.; LANGSTON<br>FAIZON SANTISMA a/k/a<br>FAIZON ANDRE LOVE,<br>individually,<br><br>           Defendants. | CASE NO. 2:18-cv-07456-ODW-GJS<br>[Assigned to Judge Otis D. Wright]<br><br>**DEFENDANTS' APPENDIX OF**<br>**EVIDENCE IN SUPPORT OF**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT OR, IN THE**<br>**ALTERNATIVE, PARTIAL**<br>**SUMMARY JUDGMENT AGAINST**<br>**PLAINTIFF**<br><br>Date:    December 16, 2019<br>Time:   1:30 P.M.<br>Ctrm:   5D (First Street Courthouse)<br>Judge:  Hon. Otis D. Wright<br><br>[Filed concurrently with Defendants'<br>Notice of Motion and Motion, Statement<br>of Uncontroverted Facts and Conclusions<br>of Law, Evidence in Support of Motion,<br>[Proposed] Order, and [Proposed]<br>Judgment]<br><br>Action filed:  8/24/18<br>Trial date:     3/20/20 |

## TABLE OF CONTENTS

**DECLARATIONS**                                                    **PAGE(S)**

Exhibit 1:   Declaration of Faizon Love  …………………………… 1-4

Exhibit 2:   Declaration of Sergio Bent  …………………………… 5-8

**DEPOSITIONS**

Exhibit 3:   Deposition of Tashiana Luke, Excerpts from Transcript

dated August 6, 2019        ………………………………… 9-69

**DOCUMENTS**

Exhibit 4:   Plaintiff's Responses to Defendant Assembly Robot, Inc.'s

Interrogatories (Set One) dated August 1, 2019  …………… 70-80

Exhibit 5:   Text Message Dated June 25, 2016  ………………… 81-82

Dated:  November 7, 2019                    BENT CARYL & KROLL, LLP


By:  /s/ *Sergio Bent*
    Sergio Bent
    Steven M. Kroll
    Attorneys for Defendants
    Faizon Love (erroneously sued as
    Langston Faizon Santisma) and
    Assembly Robot, Inc. (erroneously
    sued as Dough Boy, Inc.)

# EXHIBIT 1

1   Sergio Bent, Bar No. 180662
    Steven M. Kroll, Bar No. 216916
2   BENT CARYL & KROLL, LLP
    6300 Wilshire Boulevard, Suite 1415
3   Los Angeles, California  90048
    Telephone:  (323) 315-0510
4   Facsimile:   (323) 774-6021
    sbent@bcklegal.com
5   skroll@bcklegal.com

6
    Attorneys for Defendants
7   Faizon Love (erroneously sued as
    Langston Faizon Santisma) and
8   Assembly Robot, Inc. (erroneously
    sued as Dough Boy, Inc.)
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  TASHIANA LUKE,                      CASE NO. 2:18-cv-07456-ODW-GJS
                                        [Assigned to Judge Otis D. Wright]
14              Plaintiff,

15       v.                             **DECLARATION OF FAIZON LOVE**

16  DOUGH BOY, INC.; LANGSTON           Date:    December 16, 2010
    FAIZON SANTISMA a/k/a               Time:    1:30 P.M.
17  FAIZON ANDRE LOVE,                  Ctrm:    5D (First Street Courthouse)
    individually,                       Judge:  Hon. Otis D. Wright
18
                Defendants.
19

20

21                                      Action filed:  8/24/18
                                        Trial date:    3/20/20
22

23

24

25

26

27

28

## **DECLARATION**

I, Faizon Love, declare as follows:

1.     I have personal knowledge of each of the matters set forth below and, if called as a witness, could and would testify competently to each of them under oath.

2.     I am over the age of 18 and reside in the State of California.

3.     This declaration is submitted in support of defendants Faizon Love and Assembly Robot, Inc.'s (collectively, "Defendants") Motion for Summary Judgment or, in the alternative, Motion for Partial Summary Judgment ("Motion") against plaintiff Tashiana Luke ("Plaintiff").

4.     I am a defendant in this action.

5.     I am a professional actor and comedian.

6.     I am the sole shareholder, director and officer of Assembly Robot, Inc. and have been since its incorporation in 2015.

7.     Assembly Robot, Inc. is a California corporation in the business of providing entertainment services.

8.     Since Assembly Robot, Inc. was incorporated in 2015, it has never regularly employed five or more persons.  In 2016, Assembly Robot, Inc. employed less than five employees.

9.     I have never personally regularly employed five or more employees.

10.     I first met Tashiana Luke in approximately October 2015 when we both worked on the set of a television show called Real Husbands of Hollywood ("RHOH"), on which I was a cast member.

11.     Ms. Luke's job duties on RHOH included, among other things, assisting cast members.  Ms. Luke acted as my assistant on the set of Real Husbands of Hollywood.

Bent Caryl &
Kroll, LLP
Attorneys At Law

12.     Shortly in June 2016, I met with Ms. Luke at Roscoe's Chicken and and discussed that Assembly Robot would be filming a parody of a pornographic film. I had the conversation with Ms. Luke because I was aware that she was a writer. During the conversation, I asked Ms. Luke if she wanted to be a writer on the project and she agreed to work as a writer on the project. In fact, Ms. Luke told me that she thought the project would be funny as no one would believe that someone my size would be a porn star.

13.     In June 2016, Assembly Robot shot a test scene for the pornographic parody I had discussed with Ms. Luke. The scene involved me receiving oral sex. I forwarded the test scene to several others, including Ms. Luke, or or about June 25, 2016, for their opinion and feedback.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this $2^{th}$ day of November 2019, at Los Angeles, California.

Faizon Love

KROLL, LLP
ATTORNEYS AT LAW

# EXHIBIT 2

1   Sergio Bent, Bar No. 180662
    Steven M. Kroll, Bar No. 216916
2   BENT CARYL & KROLL, LLP
    6300 Wilshire Boulevard, Suite 1415
3   Los Angeles, California  90048
    Telephone:  (323) 315-0510
4   Facsimile:   (323) 774-6021
    sbent@bcklegal.com
5   skroll@bcklegal.com

6
    Attorneys for Defendants
7   Faizon Love (erroneously sued as
    Langston Faizon Santisma) and
8   Assembly Robot, Inc. (erroneously
    sued as Dough Boy, Inc.)
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13   TASHIANA LUKE,                    CASE NO. 2:18-cv-07456-ODW-GJS
                                       [Assigned to Judge Otis D. Wright]
14           Plaintiff,

15       v.                            **DECLARATION OF SERGIO BENT**

16   DOUGH BOY, INC.; LANGSTON         Date:    December 16, 2019
     FAIZON SANTISMA a/k/a             Time:    1:30 P.M.
17   FAIZON ANDRE LOVE,                Ctrm:    5D (First Street Courthouse)
     individually,                     Judge:  Hon. Otis D. Wright
18
             Defendants.
19

20

21                                     Action filed:  8/24/18
                                       Trial date:    3/20/20
22

23

24

25

26

27

28

BENT CARYL &
KROLL, LLP
ATTORNEYS AT LAW

                                                            DECLARATION
                                                                 6

## **DECLARATION**

I, Sergio Bent, declare as follows:

1.     I have personal knowledge of each of the matters set forth below and, if called as a witness, could and would testify competently to each of them under oath.

2.     I am an attorney at law licensed to practice in the State of California. I am a partner with the firm of Bent Caryl & Kroll, LLP, attorneys for defendants Faizon Love (erroneously sued as Langston Faizon Santisma) and Assembly Robot, Inc. (erroneously sued as Dough Boy, Inc.) (collectively, "Defendants") in this action.

3.     This declaration is submitted in support of Defendants' Motion for Summary Judgment or, in the alternative, Motion for Partial Summary Judgment ("Motion") against plaintiff Tashiana Luke ("Plaintiff").

4.     The Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 2, 2019.

5.     I took the deposition of Plaintiff on August 6, 2019, at my office in Los Angeles, California.  Attached to Defendant's Appendix of Evidence in Support of Motion ("Appendix of Evidence") as Exhibit 3 are true and correct copies of excerpts from the Videotaped Deposition of Tashiana Luke, dated August 6, 2019.

6.     Attached to Defendants' Appendix of Evidence as Exhibit 4 is a true and correct copy of Plaintiff's responses to defendant Assembly Robot, Inc.'s interrogatories, set one.

7.     Attached to Defendants' Appendix of Evidence as Exhibit 5 is a true and correct copy of a text message dated June 25, 2016.

///

///

///

1       I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.  Executed this 4th day of November

3   2019, at Los Angeles, California.

4                                                            */s/ Sergio Bent*

5                                                            Sergio Bent

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BENT CARYL &
KROLL, LLP
ATTORNEYS AT LAW

- 3 -

# EXHIBIT 3

In the Matter Of:

LUKE vs DOUGH BOY

2:18-cv-07456-ODW-GJS

---

**TASHIANA LUKE**

*August 06, 2019*

---



800.211.DEPO (3376)
EsquireSolutions.com

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4    TASHIANA LUKE,

5              Plaintiff,

6

7              vs.                    Case No.
                                      2:18-cv-07456-ODW-
8                                     GJS
     DOUGH BOY, INC.; LANGSTON
9    FAIZON SANTISMA a/k/a FAIZON
     ANDRE LOVE, individually,

10

11             Defendants.
     ~~~~~~~~~~~~~~~~~~~~~~~~~~~

12

13

14        VIDEOTAPED DEPOSITION OF TASHIANA LUKE

15

16             TUESDAY, AUGUST 6, 2019

17                  9:50 A.M.

18

19        6300 WILSHIRE BOULEVARD, SUITE 1415

20             LOS ANGELES, CALIFORNIA

21

22

23

24

25     Reported by Megan M. Grossman-Sinclair, CSR 12586



TASHIANA LUKE                                    August 06, 2019
LUKE vs DOUGH BOY                                            2

```
 1              APPEARANCES OF COUNSEL

 2

 3   For Plaintiff:

 4        DEREK SMITH LAW GROUP, PLLC
          NATHANIEL N. PECKHAM, ESQ.
 5        1835 Market Street
          Suite 2950
 6        Philadelphia, Pennsylvania  19103
          T:  (215) 391-4790
 7        nathaniel@dereksmithlaw.com

 8

 9   For Defendants:

10        BENT CARYL & KROLL LLP
11        SERGIO BENT, ESQ.
          6300 Wilshire Boulevard
12        Suite 1415
          Los Angeles, California  90048
13        T:  (323) 315-0510
          sbent@bcklegal.com

14

15

16   Also Present:

17        CHAD GIVEN, Videographer

18        FAIZON LOVE

19

20

21

22

23

24

25
```



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
3

```
1              INDEX OF EXAMINATION

2    WITNESS:  TASHIANA LUKE

3

4    EXAMINATION                              PAGE

5    By Mr. Bent                                6

6

7

8              INSTRUCTIONS NOT TO ANSWER

9                   PAGE     LINE

10                     (None)

11

12

13             INFORMATION REQUESTED

14                  PAGE     LINE

15                    (None)

16

17

18

19

20

21

22

23

24

25                   *   *   *
```



800.211.DEPO (3376)
EsquireSolutions.com

TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
4

```
 1              INDEX TO EXHIBITS

 2      EXHIBITS                                    MARKED

 3      1        Screen shots of text messages.       24

 4      2        Complaint.                           162

 5      3        E-mail, subject:  NDA for            191
                 Dough Boy Inc./Faizon Love
 6               Post Employment.

 7      4        Non-Disclosure Agreement.            192

 8      5        First Set of Interrogatories         270
                 Directed to Plaintiff,
 9               June 25, 2019.

10      6        Letter from DFEH, Confirmation       278
                 of Intake Interview
11               Appointment, May 2, 2017.

12      7        Letter from DFEH, Notice of          282
                 Case Closure and Right to Sue,
13               November 9, 2017.

14      8        Photograph/video still.              287

15

16

17

18

19

20

21

22

23

24

25                      *  *  *
```



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
20

| | | |
|---|---|---|
| 1 | said that he sent me this video and then -- can | 10:05:29 |
| 2 | you repeat the question because I am kind of | 10:05:33 |
| 3 | rambling. | 10:05:35 |
| 4 | Q.   Sure.  Did you believe that you | 10:05:36 |
| 5 | were making a complaint to her or were you just -- | 10:05:37 |
| 6 | A.   Yeah., I was just -- | 10:05:39 |
| 7 | Q.   Let me -- let me finish. | 10:05:41 |
| 8 | A.   I'm sorry. | 10:05:41 |
| 9 | Q.   Or were you just letting off steam | 10:05:41 |
| 10 | sharing this with her? | 10:05:43 |
| 11 | A.   Yes.  I was just, like, letting | 10:05:44 |
| 12 | steam off. | 10:05:46 |
| 13 | Q.   Was this conversation in June of | 10:05:47 |
| 14 | 2016 with Ms. Carrillo (sic) before or after you | 10:05:52 |
| 15 | quit? | 10:05:56 |
| 16 | A.   I had quit, like, that moment.  It | 10:05:56 |
| 17 | was all in the same time.  Like, he sent me the | 10:05:59 |
| 18 | video.  I, to myself, quit and told her what | 10:06:01 |
| 19 | happened. | 10:06:05 |
| 20 | Q.   So as I understand it from your | 10:06:05 |
| 21 | complaint, you received the video that you've | 10:06:07 |
| 22 | discussed on January 25th at approximately -- | 10:06:10 |
| 23 | A.   June. | 10:06:12 |
| 24 | Q.   June.  Sorry.  June 25th at | 10:06:12 |
| 25 | approximately 10:08 p.m. -- | 10:06:15 |



| | | |
|---|---|---|
| 1 | A.   Yes. | 10:06:19 |
| 2 | Q.   -- correct?  Yes? | 10:06:19 |
| 3 | A.   Yes. | 10:06:23 |
| 4 | Q.   And then you contacted Mr. Love at | 10:06:24 |
| 5 | approximately 1:00 a.m. on June 26th and told him | 10:06:24 |
| 6 | that you were quitting; correct? | 10:06:28 |
| 7 | A.   I think that the time frame is a | 10:06:29 |
| 8 | little off because of when my lawyer got the | 10:06:30 |
| 9 | messages, they converted back to East Coast time. | 10:06:34 |
| 10 | Q.   Okay.  So tell me time frame-wise | 10:06:40 |
| 11 | when is it that you contacted Mr. Love -- | 10:06:43 |
| 12 | A.   It was -- | 10:06:45 |
| 13 | Q.   Let me finish. | 10:06:46 |
| 14 | A.   Okay. | 10:06:48 |
| 15 | Q.   In relation to you receiving the | 10:06:49 |
| 16 | video on June 25th. | 10:06:50 |
| 17 | A.   Okay.  It would seem that when I | 10:06:51 |
| 18 | contacted him back, it should be around 10 or 11 | 10:06:55 |
| 19 | East Coast time -- West Coast time. | 10:07:00 |
| 20 | Q.   So somewhere 30 to 45 minutes after | 10:07:08 |
| 21 | you got the video? | 10:07:14 |
| 22 | A.   Yes. | 10:07:15 |
| 23 | Q.   And what did you tell Mr. Love | 10:07:15 |
| 24 | during that call? | 10:07:23 |
| 25 | A.   I was uncomfortable working for him | 10:07:24 |



| | | |
|---|---|---|
| 1 | anymore, to give me what he owed me and that we | 10:07:28 |
| 2 | were good. | 10:07:32 |
| 3 | Q.    You said: | 10:07:32 |
| 4 | "Give you what he owed you and you | 10:07:40 |
| 5 | were good." | 10:07:42 |
| 6 | What did you mean by that? | 10:07:42 |
| 7 | A.    My check. | 10:07:45 |
| 8 | Q.    And what did he say? | 10:07:46 |
| 9 | A.    He -- did you read the text | 10:07:48 |
| 10 | messages? | 10:07:49 |
| 11 | Q.    I am asking you for your | 10:07:50 |
| 12 | recollection. | 10:07:51 |
| 13 | A.    "You must think I want to fuck you. | 10:07:51 |
| 14 | I don't fuck bitches like you.  I fuck Spanish | 10:07:54 |
| 15 | bitches." | 10:07:57 |
| 16 | Q.    So I am missing something here. | 10:07:58 |
| 17 | You told me you had a conversation with | 10:08:00 |
| 18 | Mr. Love -- | 10:08:03 |
| 19 | A.    Uh-huh. | 10:08:03 |
| 20 | Q.    -- okay.  And then now you're | 10:08:04 |
| 21 | making reference to text messages.  Was the | 10:08:05 |
| 22 | communication that you had with Mr. Love where you | 10:08:11 |
| 23 | quit via text or did you've a verbal conversation | 10:08:11 |
| 24 | with him? | 10:08:13 |
| 25 | A.    Both.  He called me when I wasn't | 10:08:13 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
59

| | | |
|---|---|---|
| 1 | signed an I-9 after being an employee. | 10:53:28 |
| 2 | Q.    And who provided you with the I-9? | 10:53:36 |
| 3 | A.    Faizon. | 10:53:38 |
| 4 | Q.    And for the record, I -- I don't | 10:53:39 |
| 5 | care whether you call him Faizon or Mr. Love, I | 10:53:44 |
| 6 | just want to make sure for the recorded we're | 10:53:48 |
| 7 | talking about the same person. | 10:53:50 |
| 8 | A.    Okay. | 10:53:50 |
| 9 | Q.    Okay.  Thank you.  When you say | 10:53:51 |
| 10 | "Faizon," you're referring to Faizon Love? | 10:53:52 |
| 11 | A.    Yes. | 10:53:57 |
| 12 | Q.    So tell me about this meeting at | 10:53:58 |
| 13 | Roscoe's? | 10:54:00 |
| 14 | A.    It was this -- it was a meeting at | 10:54:01 |
| 15 | Roscoe's with Faizon and another person who was | 10:54:02 |
| 16 | supposed to work at Dough Boy.  I don't know their | 10:54:06 |
| 17 | name.  And I was given paperwork to fill out, and | 10:54:08 |
| 18 | I was also asked about a parody that Faizon wanted | 10:54:13 |
| 19 | to shoot of porn. | 10:54:19 |
| 20 | Q.    And when was this Roscoe's meeting? | 10:54:29 |
| 21 | A.    In June, maybe a week and a half | 10:54:34 |
| 22 | before the video was sent to me. | 10:54:37 |
| 23 | Q.    So roughly June 17th of 2016? | 10:54:43 |
| 24 | A.    Possibly. | 10:54:47 |
| 25 | Q.    And that was approximately a week | 10:54:47 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
61

1          A.    Phone call.                                    10:55:51

2          Q.    What did Faizon say during the --              10:55:52

3     meeting?                                                  10:55:58

4          A.    We talked about my pay.  We talked             10:56:00

5     about his parody porn.  And then he wanted to --          10:56:03

6     we were supposed to be getting ready to write the         10:56:13

7     idea out before and -- we did everything and              10:56:17

8     started casting.                                          10:56:22

9          Q.    The idea of what?  The porn parody?            10:56:23

10         A.    Yes.                                           10:56:29

11         Q.    Do you know what the name of that              10:56:29

12    parody was?                                               10:56:31

13         A.    No.                                            10:56:32

14         Q.    Do you know if the parody ever came            10:56:32

15    into existence?                                           10:56:40

16         A.    No.                                            10:56:41

17         Q.    You don't know one way or another?            10:56:41

18         A.    No.                                            10:56:43

19         Q.    Did he -- did Mr. Love say anything            10:56:43

20    during this meeting that -- that was offensive to         10:56:49

21    you?                                                      10:56:51

22         A.    No -- yes, but -- not -- I                     10:56:52

23    didn't -- say anything about it.                          10:56:58

24         Q.    Okay.  So my question is:  Did he              10:56:59

25    say anything that was offensive?                          10:57:01



800.211.DEPO (3376)
EsquireSolutions.com

19

```
 1              Q.    Did you guys eat while you were        10:59:48
 2     there?                                                10:59:49
 3              A.    I didn't.                              10:59:50
 4              Q.    Did anybody eat?                       10:59:50
 5              A.    Yes.                                   10:59:52
 6              Q.    Who?                                   10:59:52
 7              A.    Faizon and his friend.                 10:59:53
 8              Q.    And were you at the meeting the        10:59:54
 9     entire time -- well, strike that.                    10:59:57
10              How is it that everyone came                10:59:59
11     together?  Did -- did everybody waited in front      11:00:00
12     before you were seated or did you arrive later?      11:00:02
13              A.    I can't remember if they were         11:00:04
14     seated before me or not.  I -- I arrived on my       11:00:05
15     own.                                                 11:00:09
16              Q.    The conduct that you attribute to     11:00:09
17     Mr. Love at the Roscoe's, did you complain to        11:00:19
18     anyone?                                              11:00:20
19              A.    No.                                    11:00:21
20              Q.    Did you take any notes of what        11:00:21
21     happened?                                            11:00:27
22              A.    No.                                    11:00:27
23              Q.    Did you tell any friends?             11:00:27
24              A.    No.                                    11:00:30
25              Q.    Why not?                               11:00:30
```



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
66

| | | |
|---|---|---|
| 1 | A. Because it's the business. | 11:00:31 |
| 2 | Q. What do you mean it's "the | 11:00:34 |
| 3 | business"? | 11:00:35 |
| 4 | A. That happens, like, he didn't do | 11:00:36 |
| 5 | anything more, and he, like, kept on going about | 11:00:39 |
| 6 | his business. So I kept on going about mine. | 11:00:41 |
| 7 | Q. Did you think he had some kind of | 11:00:46 |
| 8 | romantic interest in you? | 11:00:47 |
| 9 | A. No. | 11:00:49 |
| 10 | Q. Did you feel he had a sexual | 11:00:50 |
| 11 | interest in you? | 11:00:55 |
| 12 | A. He wasn't making it seem like it, | 11:00:55 |
| 13 | no. | 11:00:57 |
| 14 | Q. Right. Now, you said you filled an | 11:00:57 |
| 15 | I -- you filled out an I-9 form. Did you fill | 11:01:14 |
| 16 | out -- | 11:01:18 |
| 17 | A. Or something like that. I don't | 11:01:18 |
| 18 | want to say I-9 specifically. | 11:01:19 |
| 19 | Q. Okay. So let's -- let's go back | 11:01:21 |
| 20 | because it's -- it's very important when I am | 11:01:22 |
| 21 | asking you questions and you give me answers, | 11:01:24 |
| 22 | if -- if it's not a specific document, it's | 11:01:28 |
| 23 | important that you not throw that out there. | 11:01:30 |
| 24 | A. Okay. | 11:01:30 |
| 25 | Q. Because you if I asked you | 11:01:30 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
69

| | | |
|---|---|---|
| 1 | attorney. | 11:03:29 |
| 2 | BY MR. BENT: | 11:03:30 |
| 3 | Q.   Okay.   Do you recall what those | 11:03:31 |
| 4 | documents were? | 11:03:32 |
| 5 | A.   My -- whatever we were filing with | 11:03:35 |
| 6 | the State.   I don't know the name of the | 11:03:37 |
| 7 | documents. | 11:03:40 |
| 8 | Q.   Have you ever seen Mr. Faizon's -- | 11:03:40 |
| 9 | or Mr. Love's driver's license? | 11:03:43 |
| 10 | A.   No. | 11:03:44 |
| 11 | Q.   Ever seen his passport, for | 11:03:44 |
| 12 | example? | 11:03:48 |
| 13 | A.   No. | 11:03:48 |
| 14 | Q.   Birth certificate? | 11:03:48 |
| 15 | A.   No. | 11:03:51 |
| 16 | Q.   Have you ever seen any documents | 11:03:51 |
| 17 | other than what was shown to you by your attorneys | 11:03:51 |
| 18 | indicating that Mr. Love's actual name is Langston | 11:03:54 |
| 19 | Faizon Santisma? | 11:03:58 |
| 20 | A.   No. | 11:03:58 |
| 21 | Q.   Now, in this particular case, you | 11:04:03 |
| 22 | are alleging that you were employed by Mr. Love; | 11:04:04 |
| 23 | correct? | 11:04:07 |
| 24 | A.   Yes. | 11:04:07 |
| 25 | Q.   And why do you believe Mr. Love was | 11:04:07 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
70

| 1 | your employer? | 11:04:10 |
| 2 | A.   Because we had a conversation about | 11:04:12 |
| 3 | me being his employee. | 11:04:14 |
| 4 | Q.   So tell me about that conversation. | 11:04:15 |
| 5 | A.   Well, first he text me and asked me | 11:04:19 |
| 6 | did I find a job yet.  I told him no.  He asked me | 11:04:21 |
| 7 | if I wanted to be his assistant because he needed | 11:04:26 |
| 8 | one.  I said yes.  And then from there we talked | 11:04:28 |
| 9 | on the phone about it. | 11:04:30 |
| 10 | Q.   During that conversation or during | 11:04:32 |
| 11 | any conversation, did he tell you that he would | 11:04:35 |
| 12 | individually be your employer as opposed to an | 11:04:37 |
| 13 | entity? | 11:04:39 |
| 14 | A.   Yes.  I was his employee.  I only | 11:04:40 |
| 15 | found out about the Dough Boy as I was his | 11:04:43 |
| 16 | employee, like I found out about Dough Boy, Inc. | 11:04:47 |
| 17 | Q.   Okay.  So from what I understand | 11:04:51 |
| 18 | you're telling me is, Mr. Love told you that you | 11:04:53 |
| 19 | would be his individual employee; right? | 11:04:56 |
| 20 | A.   His personal assistant, yes. | 11:04:58 |
| 21 | Q.   But did he tell you that he was | 11:05:00 |
| 22 | going to be your actual employer as opposed to | 11:05:02 |
| 23 | that you would be his assistant? | 11:05:05 |
| 24 | A.   I'm not following. | 11:05:06 |
| 25 | Q.   Okay.  So, for example, you told me | 11:05:07 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
74

| | | |
|---|---|---|
| 1 | A.    Yes. | 11:08:10 |
| 2 | Q.    Not Dough Boy because we went over | 11:08:11 |
| 3 | those, and it may sound repetitive, but I am going | 11:08:13 |
| 4 | to ask you the same series of questions.  Okay? | 11:08:15 |
| 5 | Do you know how many employees Mr. Love personally | 11:08:18 |
| 6 | had in 2015? | 11:08:20 |
| 7 | A.    One. | 11:08:21 |
| 8 | Q.    What about in 2016? | 11:08:22 |
| 9 | A.    Was I the 2015 or 2016? | 11:08:28 |
| 10 | Q.    I didn't hear what you said? | 11:08:30 |
| 11 | A.    Was I working for him in 2015 or | 11:08:32 |
| 12 | 2016? | 11:08:34 |
| 13 | Q.    You told me you started working for | 11:08:34 |
| 14 | him in January of 2016 -- June -- | 11:08:36 |
| 15 | A.    '15? | 11:08:36 |
| 16 | Q.    -- of 2016? | 11:08:39 |
| 17 | A.    Okay.  Just one. | 11:08:39 |
| 18 | Q.    Okay.  So he had one employee in | 11:08:40 |
| 19 | 2015? | 11:08:42 |
| 20 | A.    Uh-huh.  Yes. | 11:08:43 |
| 21 | Q.    Who do you understand that to be? | 11:08:44 |
| 22 | A.    I believe that to be Chelsea. | 11:08:47 |
| 23 | Q.    And how many employees did he have | 11:08:49 |
| 24 | in 2016 to your understanding?  One? | 11:08:50 |
| 25 | A.    One. | 11:08:50 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
75

| 1 | | Q. | And that was you? | 11:08:51 |
|---|---|---|---|---|

1     Q.   And that was you?                          11:08:51

2     A.   Yes.                                         11:08:51

3     Q.   And how many employees did he have          11:08:51

4  in 2017?                                            11:08:52

5     A.   I don't --                                   11:08:54

6     Q.   If you know --                              11:08:54

7     A.   -- know.                                     11:08:54

8     Q.   How about 2018?                             11:08:54

9     A.   I don't know.                                11:08:57

10    Q.   How about 2019?                             11:08:57

11    A.   I don't know.                                11:08:58

12    Q.   Did you review any payroll records          11:08:59

13 with respect to Mr. Love as an individual to any    11:09:02

14 people that you believe to be employed by the       11:09:06

15 company?                                             11:09:08

16    A.   No.                                          11:09:08

17    Q.   Did you review any documents during         11:09:08

18 your employment or any other point indicating how   11:09:13

19 many people Mr. Love personally employed?           11:09:16

20    A.   No.                                          11:09:18

21    Q.   Prior to this lawsuit, had you              11:09:22

22 heard the name Assembly Robot Inc.?                  11:09:23

23    A.   No.                                          11:09:26

24    Q.   Have you ever heard that term               11:09:26

25 before?                                              11:09:27



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
76

| 1 | A. | Um-umm -- | 11:09:34 |
| 2 | Q. | Or strike that. | 11:09:34 |
| 3 | A. | I'm not -- | 11:09:34 |
| 4 | Q. | Have you -- | 11:09:34 |
| 5 | A. | -- sure. | 11:09:35 |
| 6 | Q. | -- have you -- | 11:09:35 |
| 7 | A. | I'm not sure. | 11:09:35 |
| 8 | Q. | -- ever heard that name before? | 11:09:36 |
| 9 | A. | I'm not sure. | 11:09:37 |
| 10 | Q. | Do you know the -- what type of | 11:09:38 |
| 11 | | legal entity Assembly Robot is? | 11:09:39 |
| 12 | A. | No. | 11:09:39 |
| 13 | Q. | Do you know what relationship it | 11:09:40 |
| 14 | | has, if any, to Dough Boy, Inc? | 11:09:41 |
| 15 | A. | No. | 11:09:43 |
| 16 | Q. | Any relationship it has to | 11:09:44 |
| 17 | | Mr. Love? | 11:09:46 |
| 18 | A. | No. | 11:09:46 |
| 19 | Q. | Do you know whether Dough Boy is a | 11:09:46 |
| 20 | | d.b.a. of Assembly Robot Inc.? | 11:09:50 |
| 21 | A. | No. | 11:09:54 |
| 22 | Q. | Do you know how many employees | 11:09:54 |
| 23 | | Assembly Robot employed in 2015? | 11:09:58 |
| 24 | A. | No. | 11:10:02 |
| 25 | Q. | 2016? | 11:10:02 |



TASHIANA LUKE                                        August 06, 2019
LUKE vs DOUGH BOY                                                77

| | | | |
|---|---|---|---|
| 1 | A. | No. | 11:10:03 |
| 2 | Q. | '17? | 11:10:03 |
| 3 | A. | No. | 11:10:04 |
| 4 | Q. | '18? | 11:10:05 |
| 5 | A. | No. | 11:10:06 |

6    Q.    At any point in time, have you      11:10:06
7  reviewed any documents wi -- it -- that made    11:10:08
8  reference to Assembly Robot?                     11:10:09
9         A.    No.  Well, I'm not sure.  I don't   11:10:13
10  believe so.                                      11:10:15
11        Q.    Have you ever reviewed any          11:10:15
12  documents that you believe indicated the number of  11:10:17
13  employees that Assembly Robot had?               11:10:21
14        A.    No.                                  11:10:23
15        Q.    When did you first meet Mr. Love?   11:10:23
16        A.    In October of 2015.                 11:10:27
17        Q.    Under what circumstances?           11:10:33
18        A.    I was a production assistant on the  11:10:35
19  set of REAL HUSBANDS of Hollywood.              11:10:37
20        Q.    And by whom were you employed at    11:10:42
21  that time?                                       11:10:44
22        A.    JCE.                                 11:10:44
23        Q.    JCE?                                 11:10:46
24        A.    Yes.                                 11:10:48
25        Q.    And what is that --                 11:10:49



TASHIANA LUKE                                      August 06, 2019
LUKE vs DOUGH BOY                                              78

```
1              A.   Wait, I'm sorry, Not JCE.  That's        11:10:51
2    Jesse Collins Entertainment.  But I was employed        11:10:54
3    by Jesse Collins -- Stanley -- JSR.  That's what        11:10:57
4    it was.                                                 11:11:06
5              Q.   And JSR stood for what?  I'm sorry.      11:11:06
6              A.   Jesse Collins, Stan Lathan, and          11:11:11
7    Ralph Farquhar.                                         11:11:13
8              Q.   And when did you become employed by      11:11:15
9    JSR?                                                    11:11:20
10             A.   October 2015.                            11:11:21
11             Q.   And when did your employment with        11:11:23
12   JSR end?                                                11:11:26
13             A.   I last worked for JSR in May -- May      11:11:27
14   of 2016.                                                11:11:35
15             Q.   And what was your title?                 11:11:35
16             A.   Production assistant.                    11:11:37
17             Q.   And your duties?                         11:11:39
18             A.   I would get breakfast and lunch and      11:11:43
19   coffee runs.  Mostly, I was to be -- to assist          11:11:47
20   Kevin Hart on set.  But I would also assist Faizon      11:11:52
21   and any other cast members on set with anything         11:11:59
22   that they needed in respect to food or water or         11:12:01
23   getting them err -- things that they would like on      11:12:04
24   set, getting them to and from set and back to base      11:12:08
25   camp.                                                   11:12:14
```



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
79

| 1 | Q. Did you ever socialize with | 11:12:18 |
| 2 | Mr. Love outside of work? | 11:12:20 |
| 3 | A. No. | 11:12:20 |
| 4 | Q. Did you ever engage in any sexual | 11:12:21 |
| 5 | banter with him? | 11:12:23 |
| 6 | A. No. | 11:12:23 |
| 7 | Q. Did you ever talk to him about | 11:12:24 |
| 8 | strippers? | 11:12:26 |
| 9 | A. No. | 11:12:27 |
| 10 | Q. Did you not pitch a show to him | 11:12:28 |
| 11 | about strippers that would rob clients? | 11:12:30 |
| 12 | A. What? No. | 11:12:32 |
| 13 | Q. Did you ever pitch a show to him | 11:12:35 |
| 14 | with respect to strippers who would rob the | 11:12:39 |
| 15 | clients? | 11:12:42 |
| 16 | A. No. | 11:12:42 |
| 17 | Q. Did you ever pitch to him a show to | 11:12:42 |
| 18 | him called "Cash out"? | 11:12:43 |
| 19 | A. Ye -- not Faizon, but yes. | 11:12:43 |
| 20 | Q. What -- | 11:12:43 |
| 21 | A. I -- I wrote a show called "Cashing | 11:12:45 |
| 22 | Out" about strippers, yes. | 11:12:49 |
| 23 | Q. And what was that? | 11:12:50 |
| 24 | A. A strippers -- a reality show about | 11:12:51 |
| 25 | strippers who were doing things more than strip -- | 11:12:53 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
80

| | | |
|---|---|---|
| 1 | like who weren't stripping anymore, getting out of | 11:12:56 |
| 2 | the business. | 11:12:58 |
| 3 | Q.   Did that show that you wrote have | 11:12:58 |
| 4 | anything to do with strippers who were robbing | 11:13:04 |
| 5 | clientele? | 11:13:06 |
| 6 | A.   No.   It was a reality show about | 11:13:07 |
| 7 | strippers who were actually doing stuff with their | 11:13:09 |
| 8 | money, like opening businesses, not robbing | 11:13:11 |
| 9 | clients. | 11:13:14 |
| 10 | Q.   Did you ever talk to Mr. Love about | 11:13:15 |
| 11 | the "Cashing Out" show you had written? | 11:13:17 |
| 12 | A.   No.   I don't think I did.   I could | 11:13:19 |
| 13 | have.   I'm not sure. | 11:13:20 |
| 14 | Q.   Are you aware of how he would be | 11:13:21 |
| 15 | aware of you writing that show if you hadn't told | 11:13:25 |
| 16 | him about it? | 11:13:27 |
| 17 | MR. PECKHAM:   Objection to the | 11:13:28 |
| 18 | form.   You can answer. | 11:13:29 |
| 19 | THE WITNESS:   I sent it to a few | 11:13:30 |
| 20 | people who were involved on set. | 11:13:34 |
| 21 | BY MR. BENT: | 11:13:34 |
| 22 | Q.   When you said, "a few people | 11:13:38 |
| 23 | involved on set," what set are you referring to? | 11:13:41 |
| 24 | The Real House -- | 11:13:42 |
| 25 | A.   The REAL HUSBANDS of House -- no, | 11:13:42 |



| | | |
|---|---|---|
| 1 | Real Husband of Hollywood.  You said Real | 11:13:45 |
| 2 | Housewives. | 11:13:45 |
| 3 | Q.   I did?  I said Real Houses.  I | 11:13:45 |
| 4 | stopped. | 11:13:47 |
| 5 | A.   Oh, I thought you said Real | 11:13:47 |
| 6 | Housewives.  I'm sorry. | 11:13:50 |
| 7 | Q.   I will butcher it from time to | 11:13:51 |
| 8 | time, but -- | 11:13:53 |
| 9 | A.   Yes.  REAL HUSBANDS of Hollywood. | 11:13:54 |
| 10 | Q.   Who did you send it to? | 11:13:56 |
| 11 | A.   Nick Cannon, maybe -- I talked to | 11:14:00 |
| 12 | J.B. Smoove about it and a production assistant | 11:14:06 |
| 13 | named, Mousa; a production assistant named, | 11:14:11 |
| 14 | Justice Singleton. | 11:14:16 |
| 15 | Q.   And how is it that your employment | 11:14:19 |
| 16 | came to an end with respect to JSR? | 11:14:21 |
| 17 | A.   The season wrapped. | 11:14:24 |
| 18 | Q.   I'm sorry.  You said the season -- | 11:14:25 |
| 19 | A.   The series wrapped, yes. | 11:14:32 |
| 20 | Q.   And what was your rate of pay | 11:14:35 |
| 21 | during your employment with JSR? | 11:14:40 |
| 22 | A.   I think it was 13 an hour or | 11:14:43 |
| 23 | something like that.  I can't really explain the | 11:14:48 |
| 24 | pay rate because it's weird.  It was like 100 -- | 11:14:50 |
| 25 | and maybe a little less than $150 a day.  That was | 11:14:54 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
91

```
 1    June 9th --                                             11:23:22
 2            Q.    I changed -- I went from one, now I       11:23:22
 3    am on another subject.                                  11:23:25
 4            A.    Oh, okay, I'm sorry.                       11:23:26
 5            Q.    Okay.  Yeah.  Don't -- don't -- I         11:23:29
 6    am not trying to trick you.  With respect to the        11:23:30
 7    conversation that you were having at Roscoe's           11:23:32
 8    regarding the porn, what is it that he told you         11:23:35
 9    about the project?                                      11:23:37
10            A.    That he wanted me to work on it as        11:23:38
11    a writer and help with the casting.                     11:23:40
12            Q.    What was the -- the porno supposed        11:23:51
13    to be about?                                            11:23:52
14            A.    It was supposed to be a parody -- a       11:23:53
15    parody of him -- him doing -- doing porn.  But it       11:23:56
16    shouldn't have existed because he was letting me        11:23:59
17    know that we didn't do the casting yet, and that        11:24:02
18    I -- I didn't write anything.  He wanted me to          11:24:08
19    work on it as a writer.  I -- I hadn't written          11:24:10
20    anything it yet.                                        11:24:13
21            Q.    Did you've any issues of being            11:24:14
22    asked to be a writer for that?                          11:24:16
23            A.    No.                                       11:24:18
24            Q.    Did you --                                11:24:18
25            A.    I thought it would be funny.              11:24:18
```



| | | |
|---|---|---|
| 1 | Q.   Did you've any issues him wanting | 11:24:19 |
| 2 | to do a parody? | 11:24:22 |
| 3 | A.   No. | 11:24:23 |
| 4 | Q.   Prior to June of 2016, were you | 11:24:23 |
| 5 | ever present or part of any conversation where | 11:24:35 |
| 6 | Mr. Love was using profanity? | 11:24:37 |
| 7 | A.   Yes. | 11:24:39 |
| 8 | Q.   Okay.  On how many occasion? | 11:24:40 |
| 9 | A.   Multiple. | 11:24:42 |
| 10 | Q.   Same question with respect to | 11:24:43 |
| 11 | Mr. Love using sexual language. | 11:24:46 |
| 12 | A.   No. | 11:24:48 |
| 13 | Q.   Sexual innuendos? | 11:24:48 |
| 14 | A.   No. | 11:24:51 |
| 15 | Q.   Did you ever hear him make crude | 11:24:52 |
| 16 | jokes prior to June 9 -- 2016? | 11:24:54 |
| 17 | A.   No. | 11:24:56 |
| 18 | Q.   How about jokes of a sexual nature? | 11:24:57 |
| 19 | A.   No.  You said June 19th or June | 11:25:00 |
| 20 | 9th? | 11:25:00 |
| 21 | Q.   Between -- before June 9th. | 11:25:04 |
| 22 | A.   Oh, no. | 11:25:05 |
| 23 | Q.   Did you attend any of Mr. Love's | 11:25:06 |
| 24 | comedy shows prior to June 9, 2016? | 11:25:09 |
| 25 | A.   No. | 11:25:11 |



TASHIANA LUKE                                      August 06, 2019
LUKE vs DOUGH BOY                                              94

1          Q.    Such as?                                    11:26:00

2          A.    Kevin Hart, Nick Cannon,                    11:26:01

3    J.B. Smoove, some other -- Tiffany Haddish, I           11:26:07

4    guess.                                                  11:26:12

5          Q.    During the time that you worked on          11:26:15

6    the REAL HUSBANDS of Hollywood, was there any           11:26:21

7    nudity on the set?                                      11:26:25

8          A.    Not much, no.                               11:26:26

9          Q.    When you say not much --                    11:26:27

10         A.    I mean, it might have been like a           11:26:29

11   situational purpose for -- a shoot, but no, not         11:26:32

12   really.  Not that -- to the best of my knowledge,       11:26:34

13   no.                                                     11:26:36

14         Q.    Okay.  That answer -- so --                 11:26:37

15         A.    Because -- I'm sorry.                       11:26:38

16         Q.    Let me finish -- let me ask the             11:26:39

17   question this way.  Because when you say "not           11:26:41

18   much" that indicates that there was some.               11:26:43

19   Regardless of whether it was within a skit or           11:26:45

20   otherwise, I am just asking if you saw it.              11:26:47

21         A.    There was some nudity, yes.                 11:26:49

22         Q.    On how many occasions did you               11:26:50

23   observe nudity on the set?                              11:26:56

24         A.    I think twice.                              11:26:58

25         Q.    Tell me what you remember                   11:27:00



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
95

| | | |
|---|---|---|
| 1 | observing. | 11:27:01 |
| 2 | A.   A woman in a room with Kevin Hart. | 11:27:01 |
| 3 | And I think Kevin by himself, but I didn't see | 11:27:09 |
| 4 | like any parts of anybody. | 11:27:13 |
| 5 | Q.   So as an assistant, you understood | 11:27:14 |
| 6 | that you might see nudity on the set? | 11:27:22 |
| 7 | A.   Yes. | 11:27:24 |
| 8 | Q.   You might be subjected to sexual | 11:27:24 |
| 9 | commentary on the set? | 11:27:26 |
| 10 | A.   I don't understand. | 11:27:27 |
| 11 | Q.   Sexual language? | 11:27:27 |
| 12 | A.   I don't understand how I would be | 11:27:29 |
| 13 | subject to it. | 11:27:31 |
| 14 | Q.   Well, as the production assistant, | 11:27:31 |
| 15 | were you -- would you not be present when the show | 11:27:33 |
| 16 | is being filmed? | 11:27:35 |
| 17 | A.   But that wouldn't -- that didn't | 11:27:36 |
| 18 | have anything to do with the show.  I don't | 11:27:39 |
| 19 | understand your question.  I'm sorry. | 11:27:41 |
| 20 | Q.   Okay.  So if you don't understand a | 11:27:42 |
| 21 | question, let me know.  Okay?  As a production | 11:27:44 |
| 22 | assistant, were you ever present when they were | 11:27:46 |
| 23 | shooting scenes? | 11:27:48 |
| 24 | A.   Yes. | 11:27:51 |
| 25 | Q.   You understand that some of the | 11:27:52 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
96

| | | |
|---|---|---|
| 1 | scenes involved sexual conversations? | 11:27:53 |
| 2 | A.    Not really, though.  I mean -- not | 11:27:55 |
| 3 | really, no. | 11:27:57 |
| 4 | Q.    On the show they didn't talk about | 11:27:59 |
| 5 | men dating females? | 11:28:02 |
| 6 | A.    Yes. | 11:28:03 |
| 7 | Q.    Sexual relationships they had with | 11:28:03 |
| 8 | the females? | 11:28:08 |
| 9 | A.    I don't know. | 11:28:09 |
| 10 | Q.    I am asking what you remember -- | 11:28:10 |
| 11 | because I have seen the show, and I remember them | 11:28:12 |
| 12 | having the conversations.  I don't know if you had | 11:28:14 |
| 13 | the same understanding? | 11:28:16 |
| 14 | A.    Yeah.  I mean, I wasn't really | 11:28:18 |
| 15 | paying attention to them shooting.  Like, I never | 11:28:20 |
| 16 | really read the script, like actually sat there | 11:28:23 |
| 17 | and watched them shoot anything. | 11:28:26 |
| 18 | Q.    Did you ever watch the show after | 11:28:27 |
| 19 | it was filmed?  No? | 11:28:28 |
| 20 | A.    No. | 11:28:30 |
| 21 | Q.    Before accepting the position with | 11:28:36 |
| 22 | either Dough Boy or Mr. Love, did you've an | 11:28:38 |
| 23 | understanding that he may use profanity? | 11:28:40 |
| 24 | A.    Yes. | 11:28:44 |
| 25 | Q.    That is part of the work that he | 11:28:44 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
97

| | | |
|---|---|---|
| 1 | does, he may be making reference to sexual | 11:28:48 |
| 2 | material? | 11:28:54 |
| 3 | A.   Okay. | 11:28:54 |
| 4 | Q.   Do you agree? | 11:28:55 |
| 5 | A.   Well -- | 11:28:55 |
| 6 | Q.   Did you've that understanding? | 11:28:55 |
| 7 | A.   Yes. | 11:28:57 |
| 8 | Q.   Prior to starting work for him, did | 11:28:57 |
| 9 | you know that he was trying to make a -- a parody | 11:29:03 |
| 10 | of a porno? | 11:29:04 |
| 11 | A.   No. | 11:29:05 |
| 12 | Q.   Was one of your goals to be a | 11:29:05 |
| 13 | writer? | 11:29:16 |
| 14 | A.   It's one of them, yes. | 11:29:17 |
| 15 | Q.   Was there a certain type of | 11:29:18 |
| 16 | material that you wanted to write about? | 11:29:26 |
| 17 | A.   Rom-com. | 11:29:28 |
| 18 | Q.   Which is what? | 11:29:29 |
| 19 | A.   Romantic comedies -- and reality | 11:29:31 |
| 20 | TV. | 11:29:38 |
| 21 | Q.   Do romantic comedies to your | 11:29:38 |
| 22 | understanding include context of a sexual | 11:29:48 |
| 23 | matter -- | 11:29:50 |
| 24 | A.   Yes. | 11:29:50 |
| 25 | Q.   Do they include nudity? | 11:29:52 |



ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

37

| | | |
|---|---|---|
| 1 | A.    Could. | 11:29:58 |
| 2 | Q.    As a writer, would you be somebody | 11:30:03 |
| 3 | who would review trailers for movies or shows? | 11:30:13 |
| 4 | A.    Yes. | 11:30:18 |
| 5 | Q.    Prior to June 9th of 2016, did you | 11:30:18 |
| 6 | laugh at Mr. Love's jokes? | 11:30:36 |
| 7 | A.    Yes. | 11:30:38 |
| 8 | Q.    Did you ever tell him anything that | 11:30:39 |
| 9 | anything he said was offensive to you? | 11:30:41 |
| 10 | A.    No.  I this look at him like Uncle | 11:30:42 |
| 11 | Wendell. | 11:30:46 |
| 12 | Q.    What is Uncle Wendell? | 11:30:46 |
| 13 | A.    It's a show that he was on. | 11:30:47 |
| 14 | Q.    Sorry.  I didn't see it.  So we | 11:30:56 |
| 15 | talked about your employment with JSR, and we | 11:31:01 |
| 16 | talked about your employment with the global | 11:31:04 |
| 17 | entertainment company.  By whom are you employed | 11:31:08 |
| 18 | prior to GSR (sic)? | 11:31:17 |
| 19 | A.    I really wasn't.  I was fresh out | 11:31:23 |
| 20 | of college. | 11:31:27 |
| 21 | Q.    And where did you go to college? | 11:31:27 |
| 22 | A.    Temple University, media studies | 11:31:35 |
| 23 | and production, and I paid for it myself just so | 11:31:38 |
| 24 | you-all know, for the record. | 11:31:41 |
| 25 | Q.    Congratulations. | 11:31:43 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
100

| | | | | |
|---|---|---|---|---|
| 1 | A. | Martin Luther King. | | 11:32:41 |

```
 1                A.   Martin Luther King.                    11:32:41

 2                Q.   And where was that located?            11:32:42

 3                A.   Philadelphia.                           11:32:47

 4                Q.   Were you ever an employee of BET?       11:32:49

 5                A.   No.  Not -- well, yes if that's         11:32:56

 6   JSR.  I don't really know if my checks said JSR or       11:33:00

 7   BET.                                                      11:33:04

 8                Q.   During your employment with JSR,        11:33:04

 9   did you receive any handbooks?                            11:33:13

10                A.   Star packet.                            11:33:15

11                Q.   Did you receive any handbooks that      11:33:18

12   had policies regarding sexual harassment,                11:33:20

13   retaliation, discrimination, anything like that          11:33:22

14   that you remember?                                        11:33:24

15                A.   Yeah.                                   11:33:25

16                Q.   All right.  Now, let's focus our        11:33:25

17   attention to the conversation that you had with          11:33:47

18   Mr. Love about you becoming an employee.                 11:33:49

19                A.   Yes.                                    11:33:51

20                Q.   As I understand it you said that he     11:33:52

21   initiated that conversation?                             11:33:54

22                A.   Yes.                                    11:33:55

23                Q.   Okay.  And that was in a text?          11:33:56

24                A.   Yes.                                    11:33:57

25                Q.   Is that text included in Exhibit 1?     11:33:58
```



| | | |
|---|---|---|
| 1 | A.   I don't believe it to be. | 11:34:01 |
| 2 | Q.   Do you know what happened to that | 11:34:02 |
| 3 | text? | 11:34:05 |
| 4 | A.   I didn't se -- give it to my | 11:34:06 |
| 5 | attorney. | 11:34:08 |
| 6 | Q.   At the time that Exhibit 1 was | 11:34:08 |
| 7 | uploaded, did that text exist? | 11:34:15 |
| 8 | A.   Yes. | 11:34:18 |
| 9 | Q.   Did you ever back up your phone on | 11:34:19 |
| 10 | a computer or a cloud? | 11:34:36 |
| 11 | A.   No. | 11:34:37 |
| 12 | Q.   Never? | 11:34:38 |
| 13 | A.   No. | 11:34:38 |
| 14 | Q.   Who was your cell phone provider | 11:34:40 |
| 15 | back in 2016? | 11:34:46 |
| 16 | A.   T-Mobile. | 11:34:47 |
| 17 | Q.   So let's walk through the text | 11:34:48 |
| 18 | messages as you recall it.  Tell me everything | 11:35:05 |
| 19 | that was in the text that you recall regarding the | 11:35:06 |
| 20 | conversation about employment? | 11:35:09 |
| 21 | A.   Okay.  So the conversation started | 11:35:09 |
| 22 | because Faizon had a bet with Kevin, and I was | 11:35:12 |
| 23 | encouraging him that I knew he could accomplish | 11:35:16 |
| 24 | what his goals were.  And then from there, he went | 11:35:19 |
| 25 | to ask me did I ever find any more employment.  I | 11:35:23 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
102

| | | |
|---|---|---|
| 1 | told him I didn't.  And then he asked me did I | 11:35:27 |
| 2 | want to be his assistant, and I said yes.  And | 11:35:30 |
| 3 | then we started a phone conversation from there. | 11:35:33 |
| 4 | Q.   What is this bet? | 11:35:35 |
| 5 | A.   He was losing weight. | 11:35:36 |
| 6 | Q.   But what was the bet? | 11:35:38 |
| 7 | A.   If he didn't lose the weight, he | 11:35:41 |
| 8 | owed him money.  Or if he lost some weight, he | 11:35:42 |
| 9 | would receive some money. | 11:35:45 |
| 10 | Q.   And that was between, you said, | 11:35:47 |
| 11 | Kevin, is that Hart? | 11:35:50 |
| 12 | A.   Uh-huh. | 11:35:50 |
| 13 | Q.   Is that "yes"? | 11:35:51 |
| 14 | A.   Yes. | 11:35:52 |
| 15 | Q.   How did you become aware of this | 11:35:52 |
| 16 | bet? | 11:35:54 |
| 17 | A.   Faizon requested that I got him | 11:35:55 |
| 18 | different things on set.  He also was bringing a | 11:35:58 |
| 19 | trainer to set.  He was working with a trainer, | 11:36:00 |
| 20 | and he was -- they shot like a video or something | 11:36:03 |
| 21 | while we were on set in regards to this weight | 11:36:05 |
| 22 | loss journey. | 11:36:07 |
| 23 | Q.   And when you're saying, "on set," | 11:36:08 |
| 24 | you are talking about when you guys were working | 11:36:11 |
| 25 | on the REAL HUSBANDS? | 11:36:13 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
103

| 1 | A.   Yes. | 11:36:15 |
|---|---|---|
| 2 | Q.   How soon after this REAL HUSBANDS | 11:36:20 |
| 3 | show had wrapped up did Faizon reach out to you in | 11:36:23 |
| 4 | this text that you are referring to? | 11:36:26 |
| 5 | A.   Maybe less than a week -- no.  It | 11:36:27 |
| 6 | was, like, the day that I reached out to him was, | 11:36:29 |
| 7 | like -- I think it was like one of his goals -- | 11:36:32 |
| 8 | like a goal day that they set, which is why I | 11:36:34 |
| 9 | reached out to him on that day and just was like | 11:36:37 |
| 10 | encouraging him. | 11:36:42 |
| 11 | Q.   Okay.  So what is it that you said | 11:36:44 |
| 12 | in your text? | 11:36:46 |
| 13 | A.   That I knew he could, he would be | 11:36:48 |
| 14 | able to, like, meet his goal. | 11:36:52 |
| 15 | Q.   Do you know what that goal was in | 11:36:53 |
| 16 | the weight loss? | 11:36:55 |
| 17 | A.   No.  I'm not sure. | 11:36:55 |
| 18 | Q.   So you reach out to him and you | 11:36:57 |
| 19 | said you -- toward the effect that you know he can | 11:37:03 |
| 20 | meet his goal.  What did he say in response? | 11:37:07 |
| 21 | A.   Thank you.  He was trying. | 11:37:09 |
| 22 | Q.   And what, if anything, did you say? | 11:37:13 |
| 23 | A.   I don't really remember.  But after | 11:37:15 |
| 24 | that, he asked me did I find employment yet, was I | 11:37:17 |
| 25 | still looking for a job, and I told him "yes." | 11:37:20 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
104

| | | |
|---|---|---|
| 1 | And then he asked me to be his -- like, did I want | 11:37:24 |
| 2 | to be his assistant.  He had an opening and I | 11:37:26 |
| 3 | said, "yes." | 11:37:28 |
| 4 | Q.    Do you remember the date of that | 11:37:29 |
| 5 | text message? | 11:37:38 |
| 6 | A.    I'm not sure, no. | 11:37:41 |
| 7 | Q.    Now, it's your recollection that | 11:37:41 |
| 8 | you started employment with either Dough Boy or | 11:37:44 |
| 9 | and/or Mr. Love on June 9th.  How soon before | 11:37:47 |
| 10 | that -- using that as a start date, did you | 11:37:52 |
| 11 | receive the text about his wanting you to be his | 11:37:54 |
| 12 | assistant? | 11:37:57 |
| 13 | A.    Before -- maybe, like two days | 11:37:58 |
| 14 | prior. | 11:38:01 |
| 15 | Q.    Prior to starting, did he discuss | 11:38:01 |
| 16 | what he wanted you to do?  What your duties would | 11:38:13 |
| 17 | be? | 11:38:17 |
| 18 | A.    Yes. | 11:38:17 |
| 19 | Q.    What did he tell you? | 11:38:17 |
| 20 | A.    He -- he just told me about going | 11:38:20 |
| 21 | to different appearances -- I kind of started | 11:38:23 |
| 22 | right away.  So, like, as soon as -- once we said | 11:38:25 |
| 23 | I was his assistant, I was his assistant, and he | 11:38:28 |
| 24 | started unloading me with a lot of information. | 11:38:31 |
| 25 | Q.    How so? | 11:38:35 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
108

1      A.   Maybe a week prior to the Roscoe's.        11:54:58

2      Q.   So how soon after Jan -- sorry.            11:55:04

3  How soon after June 9th?                           11:55:06

4      A.   Not long.  I think when I -- when I        11:55:11

5  picked up my first money.  I'm not sure.           11:55:13

6      Q.   I don't know when that was, so time        11:55:16

7  frame-wise, when was that?                         11:55:18

8      A.   I am unsure of the time frame.            11:55:19

9      Q.   So let's just follow logical math.        11:55:26

10  You said you started on or about June 9th?         11:55:28

11     A.   Yes.                                       11:55:31

12     Q.   And that you were to be paid              11:55:32

13  weekly?                                            11:55:34

14     A.   Yes.                                       11:55:34

15     Q.   So it would have been at least a           11:55:35

16  week before you got paid?                          11:55:36

17     A.   Yes.                                       11:55:38

18     Q.   Correct?  Do you remember being           11:55:39

19  paid after one week?                               11:55:40

20     A.   Yes.                                       11:55:41

21     Q.   Do you remember what that amount          11:55:41

22  was?                                               11:55:43

23     A.   Yes.  It was -- I'm not sure the           11:55:45

24  exact amount because it wasn't what I was supposed  11:55:49

25  to -- I know it wasn't what I was supposed to get.  11:55:52



| | | |
|---|---|---|
| 1 | A.    No.   He was in California. | 11:59:52 |
| 2 | Q.    How do you know? | 11:59:54 |
| 3 | A.    Because I -- I seen him.  I'm | 11:59:56 |
| 4 | sorry.   What do you mean? | 11:59:58 |
| 5 | Q.    When you and Mr. Love are talking | 11:59:59 |
| 6 | about your coming on board and you becoming his | 12:00:02 |
| 7 | personal assistant, do you know whether he was in | 12:00:05 |
| 8 | Ohio at the time? | 12:00:07 |
| 9 | A.    No.   I don't know where he was. | 12:00:09 |
| 10 | Q.    When is the first time that you | 12:00:11 |
| 11 | physically saw Mr. Love after June 9th? | 12:00:23 |
| 12 | A.    When I physically saw him was -- | 12:00:25 |
| 13 | oh, when I got paid, I was -- yeah, when I got | 12:00:27 |
| 14 | paid. | 12:00:33 |
| 15 | Q.    Between the start date on June 9th | 12:00:33 |
| 16 | and the first time you got paid, did he say or do | 12:00:45 |
| 17 | anything of a sexual nature that you were offended | 12:00:48 |
| 18 | by? | 12:00:50 |
| 19 | A.    He brought up my tuition.  That was | 12:00:54 |
| 20 | offensive to me.  I don't recall the time that he | 12:00:58 |
| 21 | did it but stating that I need my tuition paid | 12:01:00 |
| 22 | for. | 12:01:16 |
| 23 | MR. BENT:  Can you read back my | 12:01:16 |
| 24 | question, please? | 12:01:18 |
| 25 | (Record read as follows: | 12:01:19 |



| | | |
|---|---|---|
| 1 | "QUESTION:  Between the start date | 12:01:19 |
| 2 | on June 9th and the first time you | 12:01:19 |
| 3 | got paid, did he say or do anything | 12:01:19 |
| 4 | of a sexual nature that you were | 12:01:19 |
| 5 | offended by.") | 12:01:20 |
| 6 | BY MR. BENT: | 12:01:20 |
| 7 | Q.    Important fact that there being of | 12:01:20 |
| 8 | a sexual nature. | 12:01:22 |
| 9 | A.    I mean, it was of a sexual nature, | 12:01:23 |
| 10 | though, like how he said it. | 12:01:25 |
| 11 | Q.    Okay. | 12:01:25 |
| 12 | A.    Like -- | 12:01:27 |
| 13 | Q.    So you say -- | 12:01:27 |
| 14 | A.    -- you know you need your tuition | 12:01:27 |
| 15 | paid.  Like, what is he bringing up my tuition | 12:01:29 |
| 16 | for? | 12:01:33 |
| 17 | Q.    Tell me about this conversation. | 12:01:34 |
| 18 | A.    It was his conversation.  I was | 12:01:35 |
| 19 | minding my business and out of his came, "You know | 12:01:38 |
| 20 | you need your tuition paid." | 12:01:38 |
| 21 | Q.    Was this an in-person conversation? | 12:01:40 |
| 22 | A.    I don't know. | 12:01:43 |
| 23 | Q.    Well, you -- you're the only one | 12:01:49 |
| 24 | here who can tell us right now who's on the | 12:01:51 |
| 25 | record.  You were part of the conversation.  So | 12:01:53 |



1  either you recall it being in person or you don't?   12:01:55

2        A.   I don't recall it.  But the   12:01:57

3  conversation had been three years ago, I don't   12:02:00

4  recall every conversation that I have had with   12:02:03

5  every person three years ago.   12:02:06

6        Q.   That's fine.  But I am entitled   12:02:07

7  to -- to your best estimate.   12:02:09

8        A.   I get it.   12:02:10

9        Q.   I am not arguing with you.  You've   12:02:11

10  told me that the first time that you saw Mr. Love   12:02:12

11  in person was one week after you started June 9th.   12:02:14

12        A.   Okay.   12:02:18

13        Q.   Right?  So was the statement about   12:02:18

14  your tuition before you saw him?   12:02:20

15        A.   Yes.   12:02:22

16        Q.   So then that conversation could not   12:02:22

17  have been in person since the first time you saw   12:02:28

18  him was a week later?   12:02:31

19        A.   It could have been in person.  I   12:02:32

20  don't recall the -- every day that I saw -- I've   12:02:34

21  seen him.   12:02:35

22        Q.   Okay.  So let's go back.  So is   12:02:36

23  your testimony different now that the first --   12:02:39

24  it's not -- strike that.  Let's try this again.   12:02:41

25             Is the first time that you saw   12:02:43



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
116

| | | |
|---|---|---|
| 1 | Mr. Love after June 9th, when you picked up the | 12:02:45 |
| 2 | money or not? | 12:02:48 |
| 3 | A.   I don't know. | 12:02:49 |
| 4 | Q.   So now let's turn to this | 12:02:50 |
| 5 | conversation where he asked you about your tuition | 12:02:57 |
| 6 | and the tuition being paid.   Where were you when | 12:03:00 |
| 7 | this conversation occurred? | 12:03:02 |
| 8 | A.   I don't know. | 12:03:03 |
| 9 | Q.   Where was he? | 12:03:03 |
| 10 | A.   I don't know. | 12:03:05 |
| 11 | Q.   Was it on a phone call? | 12:03:06 |
| 12 | A.   I don't know. | 12:03:08 |
| 13 | Q.   Was it via text? | 12:03:08 |
| 14 | A.   I don't know. | 12:03:09 |
| 15 | Q.   Was it via e -- | 12:03:09 |
| 16 | A.   No, it wasn't via text. | 12:03:10 |
| 17 | Q.   Was it via e-mail? | 12:03:11 |
| 18 | A.   I don't -- no.   It wasn't doing an | 12:03:13 |
| 19 | e-mail. | 12:03:16 |
| 20 | Q.   Tell me everything you recall him | 12:03:18 |
| 21 | saying. | 12:03:20 |
| 22 | A.   "You know you need your tuition | 12:03:21 |
| 23 | paid."   Is definitely what he said.   I don't | 12:03:23 |
| 24 | recall anything else except for that because it | 12:03:25 |
| 25 | stood out to me. | 12:03:27 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
117

| | | |
|---|---|---|
| 1 | Q. What did you say? | 12:03:28 |
| 2 | A. I rolled my eyes. I know that for | 12:03:35 |
| 3 | sure. | 12:03:37 |
| 4 | Q. Did he say anything sexual in that | 12:03:37 |
| 5 | sen -- | 12:03:40 |
| 6 | A. I took it sexual -- | 12:03:40 |
| 7 | Q. Let me finish -- | 12:03:40 |
| 8 | A. He didn't -- I don't know. I don't | 12:03:41 |
| 9 | know. You can insinuate. | 12:03:43 |
| 10 | Q. Remember what the reporter told | 12:03:45 |
| 11 | you. You've got to let me finish the question. | 12:03:47 |
| 12 | Okay? Did he say anything sexual during that | 12:03:49 |
| 13 | sentence? | 12:03:51 |
| 14 | A. I took that sex -- to be a sexual | 12:03:52 |
| 15 | sentence. It was sexual to me, so I don't | 12:03:54 |
| 16 | understand why -- how I am supposed to answer the | 12:03:56 |
| 17 | question. | 12:03:57 |
| 18 | Q. I am not asking how you took it. I | 12:03:58 |
| 19 | am asking you did he say -- | 12:04:00 |
| 20 | A. It was sexual to me. It was | 12:04:00 |
| 21 | sexual. So I -- it's not about how -- it was | 12:04:02 |
| 22 | sexual to me. So it was -- that was sexual. | 12:04:05 |
| 23 | Q. Did he use any sexual language in | 12:04:07 |
| 24 | the sentence? | 12:04:09 |
| 25 | A. No. | 12:04:09 |



| | | |
|---|---|---|
| 1 | Q.   Did he use any profanity in -- in | 12:04:10 |
| 2 | talking to you about it? | 12:04:13 |
| 3 | A.   No. | 12:04:14 |
| 4 | Q.   Why would you interpret his asking | 12:04:15 |
| 5 | you or telling you, "You know you need tuition | 12:04:17 |
| 6 | paid."  Why did you interpret that sexually? | 12:04:20 |
| 7 | A.   Why would he bring up my tuition? | 12:04:23 |
| 8 | I don't -- that -- that's why I took it to be in a | 12:04:25 |
| 9 | sexual manner.  Usually, when men bring up the | 12:04:28 |
| 10 | things that you need paid, it's because they know | 12:04:28 |
| 11 | you need some things and you might do some things | 12:04:31 |
| 12 | for the things you need. | 12:04:33 |
| 13 | Q.   Had you told Mr. Love that you had | 12:04:35 |
| 14 | tuition payments? | 12:04:36 |
| 15 | A.   No. | 12:04:39 |
| 16 | Q.   Never told him that? | 12:04:39 |
| 17 | A.   No.  Because I didn't. | 12:04:41 |
| 18 | Q.   Did you finish paying off your | 12:04:42 |
| 19 | tuition upon graduation? | 12:04:53 |
| 20 | A.   I, like, owed them like 20K. | 12:04:54 |
| 21 | Q.   And which university did you owe | 12:05:00 |
| 22 | 20K to? | 12:05:08 |
| 23 | A.   Temple. | 12:05:09 |
| 24 | Q.   And when did you pay that off? | 12:05:09 |
| 25 | A.   No, I -- I'm saying, like, I owe | 12:05:11 |



| 1 | anything to do with them and your debt, then yes. | 12:07:34 |
| 2 | You mind the business that pays you. | 12:07:41 |
| 3 | Q.   Okay.  So you've now told me about | 12:07:51 |
| 4 | the conversation regarding the debt.  You are not | 12:07:53 |
| 5 | exactly sure when that happened.  What is the next | 12:07:57 |
| 6 | thing that Mr. Love says or does of a sexual | 12:08:01 |
| 7 | nature towards you after June 9th? | 12:08:04 |
| 8 | A.   Roscoe's. | 12:08:07 |
| 9 | Q.   And that was the looking you up and | 12:08:07 |
| 10 | down and making a noise with his mouth? | 12:08:14 |
| 11 | A.   And he also commented on my outfit, | 12:08:17 |
| 12 | I stated. | 12:08:20 |
| 13 | Q.   What was the comment about the | 12:08:23 |
| 14 | outfit? | 12:08:24 |
| 15 | A.   I don't know.  But it was not cool | 12:08:25 |
| 16 | for a boss. | 12:08:27 |
| 17 | Q.   Did he say it was a nice dress? | 12:08:28 |
| 18 | A.   No. | 12:08:29 |
| 19 | Q.   What was it? | 12:08:29 |
| 20 | A.   He commented how I looked in it. | 12:08:30 |
| 21 | Q.   Tell me what you remember. | 12:08:32 |
| 22 | A.   That's what I remember. | 12:08:33 |
| 23 | Q.   Do you remember the words that he | 12:08:34 |
| 24 | said? | 12:08:35 |
| 25 | A.   No. | 12:08:36 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
123

| | | |
|---|---|---|
| 1 | Q.    Did he use any profanity in the | 12:08:40 |
| 2 | comment? | 12:08:42 |
| 3 | A.    No. | 12:08:42 |
| 4 | Q.    Did he say there is something about | 12:08:42 |
| 5 | your dress that makes him want to have sex with | 12:08:44 |
| 6 | you -- | 12:08:47 |
| 7 | A.    No. | 12:08:47 |
| 8 | Q.    -- or something sexual? | 12:08:47 |
| 9 | A.    (No audible response.) | 12:08:50 |
| 10 | Q.    No? | 12:08:51 |
| 11 | A.    (No audible response). | 12:08:53 |
| 12 | Q.    We need a verbal response. | 12:08:56 |
| 13 | A.    No. | 12:08:58 |
| 14 | Q.    What is it that Mr. Love does next | 12:08:58 |
| 15 | of a sexual nature? | 12:09:01 |
| 16 | A.    He sent me a video. | 12:09:02 |
| 17 | Q.    And that is the video we have | 12:09:04 |
| 18 | discussed that was sent on June 25th -- | 12:09:06 |
| 19 | A.    Yes. | 12:09:09 |
| 20 | Q.    -- at 10:18? | 12:09:09 |
| 21 | Is that the universe of the sexual | 12:09:14 |
| 22 | innuendos or remarks or conduct that Mr. Love | 12:09:20 |
| 23 | engaged in towards you during your two weeks of | 12:09:24 |
| 24 | employment? | 12:09:27 |
| 25 | A.    I mean he commented on me a few | 12:09:28 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
124

```
 1    times.  I don't know -- I don't know when          12:09:32
 2    everything happened.  I didn't write it down.       12:09:38
 3              Q.    Okay.  So let's go through this.    12:09:40
 4    You told me the first one was when he asked you     12:09:42
 5    about needing your tuition paid; correct?           12:09:45
 6              A.    Uh-huh.  He told me about --         12:09:48
 7              Q.    Hold on.  And then you said the      12:09:52
 8    next one was Roscoe's.  So that's the commenting    12:09:54
 9    on your appearance, looking you up and down and     12:09:57
10    making a sound; correct?                            12:10:00
11              A.    Yes.  He also comment --            12:10:02
12              Q.    What is the next thing he does of a 12:10:03
13    sexual nature?                                      12:10:06
14              A.    He commented on my jeans and -- how 12:10:07
15    they looked on me.                                  12:10:10
16              Q.    What else?                          12:10:11
17              A.    That's all, like, I really          12:10:12
18    remember.                                           12:10:14
19              Q.    And then where is the video in      12:10:14
20    relation to the three you just told me?            12:10:17
21              A.    That's -- that's the last straw.    12:10:21
22              Q.    I understand that.  But you've now  12:10:24
23    added an additional one, which is he commented on  12:10:25
24    your jeans, and I want to know the timeline --     12:10:28
25              A.    I mean, I don't know the timeline.  12:10:30
```



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
125

| | | |
|---|---|---|
| 1 | I didn't write anything down.  I just took a | 12:10:34 |
| 2 | mental note of it, like, damn.  I mean, during | 12:10:37 |
| 3 | this, like -- during this time that he sent me | 12:10:40 |
| 4 | this video, I was -- like the video was what was | 12:10:42 |
| 5 | my exit because I was working on my exit strategy | 12:10:45 |
| 6 | before I got the video.  And once I got the video, | 12:10:48 |
| 7 | it was like, boom, don't need an exit strategy.  I | 12:10:51 |
| 8 | am out. | 12:10:54 |
| 9 |         Q.   The comment regarding the jeans, | 12:10:54 |
| 10 | did that occur before or after the comment -- | 12:10:59 |
| 11 |         A.   Don't recall. | 12:11:01 |
| 12 |         Q.   You didn't let me -- hear the | 12:11:03 |
| 13 | question. | 12:11:04 |
| 14 |         A.   Sorry. | 12:11:04 |
| 15 |         Q.   Did you -- strike that. | 12:11:06 |
| 16 |              With respect to the comment about | 12:11:06 |
| 17 | the jeans, did it happen before or after the | 12:11:08 |
| 18 | comment related to the tuition? | 12:11:11 |
| 19 |         A.   I don't know. | 12:11:12 |
| 20 |         Q.   Did it happen before or after the | 12:11:13 |
| 21 | comment that you -- referred to him making at | 12:11:15 |
| 22 | Roscoe's? | 12:11:20 |
| 23 |         A.   I don't know. | 12:11:21 |
| 24 |         Q.   Did it happen before or after the | 12:11:21 |
| 25 | video? | 12:11:24 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
126

| 1 | A. Before. | 12:11:25 |
| 2 | Q. So now have we gone through the | 12:11:25 |
| 3 | universe of sexual verbiage, conduct, comments | 12:11:34 |
| 4 | that you attribute to Mr. Love? | 12:11:37 |
| 5 | A. Yes. | 12:11:38 |
| 6 | Q. Other than Mr. Love, do you | 12:11:39 |
| 7 | attribute any sexual comments, innuendos, or | 12:11:46 |
| 8 | conduct to any other person who you believe to be | 12:11:49 |
| 9 | an employee of his or an employee of Dough Boy? | 12:11:53 |
| 10 | A. No. | 12:11:59 |
| 11 | Q. So tell me what the comment was | 12:12:00 |
| 12 | with respect to the jeans? | 12:12:01 |
| 13 | A. Just how he liked that how they | 12:12:02 |
| 14 | looked on me. | 12:12:05 |
| 15 | Q. What did he say specifically? | 12:12:06 |
| 16 | A. I don't know. | 12:12:06 |
| 17 | Q. Did he use any profanity? | 12:12:07 |
| 18 | A. No. I don't recall. | 12:12:17 |
| 19 | Q. Did he make any lewd comment? | 12:12:18 |
| 20 | A. I don't recall. | 12:12:21 |
| 21 | Q. Do you interpret from the statement | 12:12:21 |
| 22 | regarding your jeans that he was interested in a | 12:12:32 |
| 23 | romantic relationship? | 12:12:36 |
| 24 | A. I interpreted that he was looking | 12:12:37 |
| 25 | at me. | 12:12:38 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
127

| 1 | Q.  As we sit here today, do you | 12:12:39 |
| 2 | remember a single word that he uttered in | 12:12:48 |
| 3 | reference to the jeans? | 12:12:50 |
| 4 | A.  No.  It was, like, about the fit of | 12:12:59 |
| 5 | the jeans or of how the jeans fit on me. | 12:13:05 |
| 6 | Q.  Were you in person at the time that | 12:13:09 |
| 7 | he made the comment? | 12:13:10 |
| 8 | A.  Yes. | 12:13:11 |
| 9 | Q.  Where were you? | 12:13:12 |
| 10 | A.  I don't know. | 12:13:13 |
| 11 | Q.  Was it during the day?  Was it at | 12:13:13 |
| 12 | night? | 12:13:21 |
| 13 | A.  It was during the day. | 12:13:21 |
| 14 | Q.  Was it at an event? | 12:13:22 |
| 15 | A.  I don't remember. | 12:13:24 |
| 16 | Q.  Was anyone else present? | 12:13:25 |
| 17 | A.  No.  It was just me and him. | 12:13:26 |
| 18 | Q.  With respect to the comment about | 12:13:28 |
| 19 | your needing tuition, was anyone else present? | 12:13:34 |
| 20 | A.  I don't recall. | 12:13:37 |
| 21 | Q.  Do you know where you were at the | 12:13:38 |
| 22 | time? | 12:13:42 |
| 23 | A.  No. | 12:13:42 |
| 24 | Q.  Did Mr. Love ever touch you | 12:13:43 |
| 25 | inappropriately? | 12:13:50 |



| | | |
|---|---|---|
| 1 | Q.   Do you know whether this -- this | 12:14:49 |
| 2 | was a comedy show or personal appearance? | 12:14:51 |
| 3 | A.   It was a personal appearance. | 12:14:54 |
| 4 | Q.   Was it a particular venue? | 12:14:54 |
| 5 | A.   I can't recall the name of it. | 12:15:02 |
| 6 | Q.   Do you know what type of venue it | 12:15:03 |
| 7 | was, whether it was a movie theater or comedy | 12:15:05 |
| 8 | store? | 12:15:08 |
| 9 | A.   No.  It was like a party, like a | 12:15:08 |
| 10 | bar-club thing but not a club. | 12:15:10 |
| 11 | Q.   And what was your issue with | 12:15:16 |
| 12 | respect to him sending you there? | 12:15:17 |
| 13 | A.   Because he had already accepted | 12:15:20 |
| 14 | monies for the event, and he didn't have any | 12:15:21 |
| 15 | intentions on showing up. | 12:15:25 |
| 16 | Q.   Anything else that Mr. Love had | 12:15:26 |
| 17 | done that caused you to start having an exit | 12:15:35 |
| 18 | strategy -- | 12:15:38 |
| 19 | A.   That was the second time he did | 12:15:38 |
| 20 | that. | 12:15:40 |
| 21 | Q.   You've got to let me finish my | 12:15:40 |
| 22 | questions -- | 12:15:42 |
| 23 | A.   Sorry. | 12:15:44 |
| 24 | Q.   -- please.  Just in your head, | 12:15:44 |
| 25 | count one, two -- | 12:15:48 |



TASHIANA LUKE                                                August 06, 2019
LUKE vs DOUGH BOY                                                       130

| | | |
|---|---|---|
| 1 | A.    I am trying.  I'm sorry. | 12:15:49 |
| 2 | Q.    So you said there were two shows | 12:15:50 |
| 3 | that he scheduled or two events that he scheduled | 12:15:52 |
| 4 | that he didn't show up for? | 12:15:55 |
| 5 | A.    Yes. | 12:15:56 |
| 6 | Q.    And that bothered you? | 12:15:56 |
| 7 | A.    Yes. | 12:15:58 |
| 8 | Q.    And as a result, you started to | 12:15:58 |
| 9 | come up with an exit strategy? | 12:16:01 |
| 10 | A.    Yes.  Like between his commentary | 12:16:02 |
| 11 | and me going to events that he wasn't showing up | 12:16:06 |
| 12 | for because that ultimately was endangering me, I | 12:16:10 |
| 13 | didn't feel comfortable working for him. | 12:16:14 |
| 14 | Q.    Did you ever complain to anyone | 12:16:15 |
| 15 | about Mr. Love's -- strike that. | 12:16:22 |
| 16 | Let me give you a context.  We're | 12:16:23 |
| 17 | not talking about lawyers.  I am talking about | 12:16:25 |
| 18 | someone that you knew to be either a supervisor, | 12:16:28 |
| 19 | manager, employee of either Dough Boy or Mr. Love, | 12:16:29 |
| 20 | did you ever complain to them about the needing | 12:16:33 |
| 21 | tuition comment? | 12:16:35 |
| 22 | A.    No. | 12:16:35 |
| 23 | Q.    About his conduct or comments at | 12:16:35 |
| 24 | Roscoe's? | 12:16:38 |
| 25 | A.    No. | 12:16:38 |



TASHIANA LUKE                                             August 06, 2019
LUKE vs DOUGH BOY                                                    131

| 1 | Q. Comments regarding the jeans? | 12:16:38 |
| 2 | A. No. | 12:16:40 |
| 3 | Q. And we already talked about the | 12:16:41 |
| 4 | video. Did you tell Mr. Love that you didn't | 12:16:43 |
| 5 | appreciate or did not like the comment regarding | 12:16:46 |
| 6 | the tuition? | 12:16:50 |
| 7 | A. No. | 12:16:51 |
| 8 | Q. Did you complain to him about any | 12:16:51 |
| 9 | of the conduct at the Roscoe's? | 12:16:54 |
| 10 | A. No. | 12:16:55 |
| 11 | Q. Did you say anything to him or | 12:16:57 |
| 12 | complain to him about the comments regarding the | 12:16:58 |
| 13 | jeans? | 12:17:00 |
| 14 | A. No. | 12:17:00 |
| 15 | Q. Are you familiar with -- with the | 12:17:20 |
| 16 | name Tramp in reference to the parody for the | 12:17:20 |
| 17 | porna -- for the pornographic? | 12:17:24 |
| 18 | A. I am familiar with the name Tramp | 12:17:25 |
| 19 | but not in reference to the parody, no. | 12:17:26 |
| 20 | Q. So what did you -- in relation to | 12:17:28 |
| 21 | Mr. Love and the name Tramp, what is your | 12:17:32 |
| 22 | understanding? | 12:17:34 |
| 23 | A. He had, like, a brand, a brand name | 12:17:34 |
| 24 | Tramp. T-shirts and hats. | 12:17:39 |
| 25 | Q. Did you understand that the parody | 12:17:45 |



TASHIANA LUKE                                    August 06, 2019
LUKE vs DOUGH BOY                                        132

```
 1   that he was interested in shooting would be named      12:17:56
 2   Tramp?                                                 12:17:59
 3           A.    No.                                      12:17:59
 4           Q.    Had you ever seen a trailer for          12:17:59
 5   Tramp?                                                 12:18:02
 6           A.    No.                                      12:18:03
 7           Q.    Ever seen a trailer involving            12:18:03
 8   Mr. Love at various locations throughout the           12:18:08
 9   world?                                                 12:18:11
10           A.    No.                                      12:18:11
11           Q.    Never?                                   12:18:11
12           A.    (No audible response).                  12:18:14
13           Q.    Did you produce a video in -- in         12:18:17
14   this case of the Tramp --                              12:18:24
15           A.    No.                                      12:18:26
16           Q.    -- trailer?  No?                         12:18:26
17           A.    No.                                      12:18:28
18           Q.    So when Mr. Love talked to you           12:18:28
19   about the parody, he was interested in doing, you      12:18:43
20   said the first time that discussion came up was at     12:18:45
21   Roscoe's; correct?                                     12:18:49
22           A.    Yes.                                     12:18:50
23           Q.    What did you understand would be         12:18:50
24   the material that you would be writing about for       12:18:51
25   that parody?                                           12:18:53
```



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
133

| | | |
|---|---|---|
| 1 | A.    We were just going to write the | 12:18:54 |
| 2 | scene. | 12:18:55 |
| 3 | Q.    And what was the scene to entail? | 12:18:57 |
| 4 | A.    Just Faizon having parody sex and | 12:19:01 |
| 5 | we needed to do -- we hadn't done casting yet. | 12:19:05 |
| 6 | Q.    So you understood the parody would | 12:19:08 |
| 7 | include nudity? | 12:19:13 |
| 8 | A.    No. | 12:19:14 |
| 9 | Q.    You said it would include | 12:19:17 |
| 10 | Faizon having -- a parody having sex. | 12:19:21 |
| 11 | A.    Yes, but that doesn't -- a parody | 12:19:23 |
| 12 | is not real.  So a parody is something that's | 12:19:25 |
| 13 | supposed to be overexaggerated of something.  So | 12:19:28 |
| 14 | him shooting a parody of porn, it would be like | 12:19:31 |
| 15 | them doing porn but it would be overly exaggerated | 12:19:34 |
| 16 | and you can tell that it's not real.  Like it | 12:19:37 |
| 17 | shouldn't look like it's real porn. | 12:19:40 |
| 18 | Q.    But you understand pornography | 12:19:42 |
| 19 | includes nudity? | 12:19:46 |
| 20 | A.    But parodies -- | 12:19:48 |
| 21 | Q.    That's not what I'm asking. | 12:19:48 |
| 22 | A.    But we weren't shooting porn -- | 12:19:50 |
| 23 | Q.    You understand pornographic films | 12:19:50 |
| 24 | include nudity; correct? | 12:19:52 |
| 25 | A.    Yes. | 12:19:53 |



| | | |
|---|---|---|
| 1 | THE WITNESS:  Ish, yeah. | 12:20:44 |
| 2 | BY MR. BENT: | 12:20:45 |
| 3 | Q.   What do you mean by "ish"? | 12:20:45 |
| 4 | A.   Like, I don't recall his dick being | 12:20:46 |
| 5 | in somebody's mouth.  Like, I don't think that | 12:20:48 |
| 6 | that should happen in a parody because that's real | 12:20:51 |
| 7 | porn. | 12:20:55 |
| 8 | Q.   Did he tell you what scenes would | 12:20:55 |
| 9 | be included in the parody? | 12:20:57 |
| 10 | A.   We hadn't -- I hadn't written | 12:21:00 |
| 11 | anything. | 12:21:01 |
| 12 | Q.   I am asking you during that -- the | 12:21:02 |
| 13 | Roscoe conversation, did he tell you what type of | 12:21:05 |
| 14 | scenes would be included in the parody? | 12:21:07 |
| 15 | A.   No.  He just wanted -- he just let | 12:21:09 |
| 16 | me know he wanted it to be very funny. | 12:21:11 |
| 17 | Q.   Did you ask him what scenes would | 12:21:14 |
| 18 | be included? | 12:21:15 |
| 19 | A.   I was supposed to think on it. | 12:21:16 |
| 20 | Q.   My question is:  Did you ask him? | 12:21:19 |
| 21 | A.   I was doing the writing of it -- | 12:21:21 |
| 22 | Q.   I understand that.  Did you ask him | 12:21:22 |
| 23 | what kind of scenes would be included at Roscoe's | 12:21:23 |
| 24 | in the parody? | 12:21:26 |
| 25 | A.   No. | 12:21:27 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
136

| | | |
|---|---|---|
| 1 | Q.   Did you understand that with | 12:21:27 |
| 2 | respect to writing materials, there would be test | 12:21:46 |
| 3 | scenes that were done? | 12:21:48 |
| 4 | A.   Yes. | 12:21:49 |
| 5 | Q.   And what would test scenes | 12:21:50 |
| 6 | generally consist of? | 12:21:52 |
| 7 | A.   The -- the per -- like the cast and | 12:21:52 |
| 8 | acting out what was going on in the scenes.  What | 12:21:59 |
| 9 | should happen in the scenes. | 12:22:04 |
| 10 | Q.   And as a production a -- assistant, | 12:22:05 |
| 11 | had you come into situations where you would view | 12:22:13 |
| 12 | test scenes? | 12:22:16 |
| 13 | A.   Yes. | 12:22:17 |
| 14 | Q.   Would be asked about test scenes? | 12:22:18 |
| 15 | A.   No. | 12:22:20 |
| 16 | Q.   How about when you became a | 12:22:24 |
| 17 | coordinator, were you asked about test scenes? | 12:22:25 |
| 18 | A.   No. | 12:22:27 |
| 19 | Q.   As a writer, would you expect to | 12:22:28 |
| 20 | have input with respect to test scenes? | 12:22:30 |
| 21 | A.   Yes. | 12:22:32 |
| 22 | Q.   Why? | 12:22:35 |
| 23 | A.   Because I would be writing and | 12:22:35 |
| 24 | either in agreement with what's going on or | 12:22:41 |
| 25 | something would need to be fixed. | 12:22:44 |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
137

| | | |
|---|---|---|
| 1 | Q.    So as a writer, you understood that | 12:22:46 |
| 2 | it would be important for your job to review test | 12:22:48 |
| 3 | scenes because they would contribute to what you | 12:22:50 |
| 4 | would be writing. | 12:22:53 |
| 5 | A.    But we hadn't done casting yet. | 12:22:53 |
| 6 | Q.    That's not the question I asked | 12:22:53 |
| 7 | you. | 12:22:53 |
| 8 | A.    Yes. | 12:22:53 |
| 9 | Q.    I mean, can you read back my | 12:22:53 |
| 10 | question and see if we can get an answer? | 12:23:06 |
| 11 | (Record read as follows: | 12:23:06 |
| 12 | "QUESTION:  As a writer, you | |
| 13 | understood that it would be | |
| 14 | important for your job to review | |
| 15 | test scenes because they would | |
| 16 | contribute to what you would be | |
| 17 | writing.") | 12:23:06 |
| 18 | THE WITNESS:  Yes. | 12:23:06 |
| 19 | BY MR. BENT: | 12:23:06 |
| 20 | Q.    And you also understood that with | 12:23:07 |
| 21 | respect to the test scenes, you would get to say | 12:23:08 |
| 22 | "yeah" or "nay" as to whether that would be a | 12:23:12 |
| 23 | direction that you would go; correct? | 12:23:16 |
| 24 | A.    Yes. | 12:23:18 |
| 25 | Q.    Now, if we look at Exhibit 1, | 12:23:23 |



| | | |
|---|---|---|
| 1 | Page 13, the video that Mr. Love sent you on 6-25, | 12:23:25 |
| 2 | 10:18, asks or tells you: | 12:23:41 |
| 3 | "I shot a test scene. | 12:23:43 |
| 4 | What do you think?" | 12:23:44 |
| 5 | Correct? | 12:23:44 |
| 6 | A.    Uh-huh. | 12:23:45 |
| 7 | Q.    Yes? | 12:23:46 |
| 8 | A.    Yeah. | 12:23:47 |
| 9 | Q.    And this text message was sent to | 12:23:47 |
| 10 | you after the Roscoe's discussion where he told | 12:23:53 |
| 11 | you he wanted to -- wanted you to write for the | 12:23:56 |
| 12 | parody of the pornographic film; correct? | 12:23:58 |
| 13 | A.    Yes. | 12:24:00 |
| 14 | Q.    And you understood as a writer, one | 12:24:05 |
| 15 | of your duties would be to give input as to | 12:24:07 |
| 16 | whether you were in agreement or disagreement with | 12:24:10 |
| 17 | the direction in which it was going; correct? | 12:24:16 |
| 18 | A.    Yes. | 12:24:16 |
| 19 | Q.    So why would this scene offend | 12:24:17 |
| 20 | you -- | 12:24:19 |
| 21 | A.    Because it's -- | 12:24:19 |
| 22 | Q.    Let me finish -- | 12:24:19 |
| 23 | A.    I'm sorry.  Okay.  Go ahead. | 12:24:19 |
| 24 | Q.    He's asking what do you think and | 12:24:21 |
| 25 | you are a writer? | 12:24:22 |



| | | |
|---|---|---|
| 1 | right? | 12:26:08 |
| 2 | A.   I wasn't -- oh, I was his | 12:26:08 |
| 3 | assistant.  He was just giving me some growth in | 12:26:11 |
| 4 | the company as a writer on this project.  I was | 12:26:13 |
| 5 | not going to be a writer, like, from -- like, this | 12:26:16 |
| 6 | is his giving me a shot.  I was still his | 12:26:22 |
| 7 | assistant. | 12:26:25 |
| 8 | Q.   Okay.  You understood that he did | 12:26:26 |
| 9 | not need your approval to cast without you; | 12:26:28 |
| 10 | correct? | 12:26:30 |
| 11 | A.   Yes. | 12:26:34 |
| 12 | Q.   He could hire individuals and cast | 12:26:34 |
| 13 | individuals without your approval; correct? | 12:26:35 |
| 14 | A.   Yes. | 12:26:37 |
| 15 | Q.   Okay.  He could test scenes without | 12:26:38 |
| 16 | your knowledge or approval; correct? | 12:26:41 |
| 17 | A.   Yes.  So then -- so then it would | 12:26:42 |
| 18 | be harassment, him yelling at me and because we | 12:26:44 |
| 19 | haven't done casting yet, because he was expecting | 12:26:48 |
| 20 | casting to already be set up, with not giving me | 12:26:50 |
| 21 | any money or any guide -- like, direction on how | 12:26:54 |
| 22 | he wanted to the casting to be.  But he was | 12:26:56 |
| 23 | calling me multiple times about casting. | 12:26:57 |
| 24 | MR. BENT:  Move to strike | 12:27:00 |
| 25 | everything after "yes" as non-responsive. | 12:27:02 |



TASHIANA LUKE                                              August 06, 2019
LUKE vs DOUGH BOY                                                    154

| | | |
|---|---|---|
| 1 | you spoken to any other former employees of | 01:29:00 |
| 2 | Mr. Love? | 01:29:02 |
| 3 | A.    No. | 01:29:02 |
| 4 | Q.    How about Dough Boy? | 01:29:03 |
| 5 | A.    No. | 01:29:05 |
| 6 | Q.    Did you undergo any type of | 01:29:05 |
| 7 | training when you started working for either Dough | 01:29:16 |
| 8 | Boy or Mr. Love? | 01:29:20 |
| 9 | A.    Just our phone conversations. | 01:29:21 |
| 10 | Q.    During the time that you worked for | 01:29:23 |
| 11 | Dough Boy and/or Mr. Love, did you observe him | 01:29:37 |
| 12 | engage in any type of sexual acts or sexual | 01:29:39 |
| 13 | comments towards other individuals? | 01:29:42 |
| 14 | A.    No. | 01:29:44 |
| 15 | Q.    Ever see him touch anybody during | 01:29:44 |
| 16 | your employment in a manner that you felt was | 01:29:51 |
| 17 | inappropriate? | 01:29:54 |
| 18 | A.    No. | 01:29:54 |
| 19 | Q.    Do you know if the video that he | 01:29:55 |
| 20 | sent you on June 25th was sent to other | 01:29:57 |
| 21 | individuals? | 01:30:00 |
| 22 | A.    No. | 01:30:00 |
| 23 | THE COURT REPORTER:  Can I | |
| 24 | interrupt for a second?  This is the Exhibit -- I | |
| 25 | want both of you to be aware of -- that she's -- | |



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
280

1      A.   I'm sorry.  I just thought -- it          04:18:16

2  sounded like a Bible verse.                        04:18:19

3      Q.   And -- and just so you understand,        04:18:23

4  when I went through and I renumbered these things  04:18:23

5  so we could a bigger font, it just double-stamped  04:18:25

6  them.  That's why that's there.  Your attorney     04:18:28

7  didn't do that.                                     04:18:30

8           In Bates stamp No. 27, the third          04:18:31

9  paragraph, it says:                                04:18:39

10           "Between June 9, 2016, and                04:18:40

11           June 26, I complained about and           04:18:42

12           opposed sexual harassment."              04:18:45

13           Do you see that?                          04:18:47

14      A.   Yes.                                      04:18:47

15      Q.   But you didn't actually complain to      04:18:48

16  anybody, did you?                                  04:18:50

17      A.   No.                                       04:18:55

18      Q.   No, you did not complain; correct?       04:18:55

19      A.   Yes.  No -- not to like -- Faizon.        04:18:57

20      Q.   Or human resources or --                 04:19:01

21      A.   I didn't have human resources to         04:19:05

22  contact.                                           04:19:06

23      Q.   This says:                                04:19:07

24           "After complaining I was                  04:19:12

25           subjected to multiple harassing          04:19:13



TASHIANA LUKE
LUKE vs DOUGH BOY

August 06, 2019
291

REPORTER'S CERTIFICATION

1

2

3

4

5       I, Megan Grossman-Sinclair, Certified

6   Shorthand Reporter, in and for the State of

7   California, do hereby certify:

8

9       That the foregoing witness was by me duly

10   sworn; that the deposition was then taken before

11   me at the time and place herein set forth; that

12   said testimony and proceedings were reported

13   stenographically by me and later transcribed into

14   typewriting under my direction; that the foregoing

15   is a true record of the testimony and proceedings

16   taken at that time.

17

18       IN WITNESS WHEREOF, I have subscribed my name

19   this 22nd day of August 2019.

20

21

22

23   Megan Grossman-Sinclair, CSR No. 12586

24

25



# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
-----------------------------------------------------------------------X
TASHIANA LUKE,

                                        Civil Action No.:
                          Plaintiff,     2:18-CV-07456-ODW-GJS
                                        (Assigned to Judge Otis D. Wright)


          -against-

DOUGH BOY, INC,: LANGSTON
FAISON SANTISMA a/k/a
FAIZON ANDRE LOVE, individually,


                          Defendants.
-----------------------------------------------------------------------X


      Plaintiff Tashiana Luke, by and through her attorneys, DEREK SMITH LAW GROUP,

PLLC, as and for a response to Defendant Assembly Robot, Inc., First Set of Interrogatories

Directed to Plaintiff dated June 25, 2019, hereby responds as follows:


              <u>**QUALIFICATIONS AND GENERAL OBJECTIONS**</u>

      1.    Plaintiff objects to the Interrogatories to the extent that they are vague, ambiguous, over

broad, unduly burdensome and oppressive, seek information that is not relevant or reasonably

calculated to lead to the discovery or admissible evidence, and seek information beyond that

permitted by the Federal Rules of Civil Procedure.

      2.    Plaintiff objects to the Interrogatories to the extent that they contain words or phrases that

are confusing or lacking in sufficient certainty to permit a response.  In her responses below,

Plaintiff responds to the extent that he understands the Interrogatories.

71

3.     Plaintiff objects to the Interrogatories to the extent that they seek information that is protected by attorney-client privilege, attorney work product privilege, or any other protected privilege.

4.     Plaintiff objects to the Interrogatories to the extent that they request information that has not been fully developed at this stage of the litigation.  Plaintiff's responses to the Interrogatories are limited because, among other reasons, (1) she has not had time to discover adequately factual information upon which to answer the Interrogatories; and (2) discovery is not yet complete.

5.     Plaintiff reserves the right to modify, amend and/or supplement his responses.

6.     All responses made herein are subject to the objections stated above and any further objections specifically stated.

## INTERROGATORIES

**1.     Identify every person who Plaintiff claims has knowledge that she was employed by Defendant. [As used herein, the term "identify" when used in connection with a person requires Plaintiff to provide the full name, title, address and telephone number for each person she identifies. As used herein, the terms "Plaintiff," "She," and "Her" refer to plaintiff Tashiana Luke. As used herein, the term Defendant refers to defendant Assembly Robot (erroneously sued as Dough Boy, Inc.), his employees, supervisors, attorney(s), or any person acting as his agent or otherwise on his behalf.)**

**ANSWER:**     Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Where a telephone number is not listed, Plaintiff does not know that person's telephone number. Plaintiff reserves the right to supplement this answer as more information becomes available.

2

2.      **Identify every person who Plaintiff claims has knowledge that she was employed by Defendant.**

**ANSWER**:  Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.


3.      **Identify every person who Plaintiff claims has knowledge that Defendant and defendant Assembly Robot, Inc. (erroneously sued as Dough Boy, Inc.) were her joint employers.**

**ANSWER**:  Plaintiff responds as follows:

- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.

4.      **Identify every person who Plaintiff claims has knowledge that Defendant paid her compensation.**

**ANSWER:**  Plaintiff responds as follows:

- Faizon Love
- Brent Johnson

Plaintiff reserves the right to supplement this answer as more information becomes available.

5.      **State the amount of compensation Defendant paid Plaintiff during her alleged employment.**

**ANSWER:**  Plaintiff responds as follows:

3

73

Plaintiff was paid approximately $1,500 by Defendant during her employment.

Plaintiff reserves the right to supplement this answer as more information becomes available.

**6.      Identify every person who Plaintiff claims has knowledge that she was subjected to sex/gender discrimination during her alleged employment with Defendant.**

<u>**ANSWER:**</u>    Plaintiff responds as follows:

- Faizon Love
- Marcus McQueen

**7.      Identify every person who Plaintiff claims has knowledge that she was subjected to sexual harassment during her alleged employment with Defendant.**

<u>**ANSWER:**</u>    Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.

**8.      Identify every person who Plaintiff claims has knowledge that she was subjected to a hostile work environment during her alleged employment with Defendant.**

<u>**ANSWER**</u>:  Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff also recalls a club promoter named "Black" who witnessed the hostile work environment that Plaintiff was subjected to, but she does not recall his full name.

Plaintiff reserves the right to supplement this answer as more information becomes available.

9.      **Identify every person who Plaintiff claims has knowledge that she was subjected to retaliation during her alleged employment with Defendant.**

**ANSWER**:  Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.


10.      **State the dates and times that anyone affiliated with Defendant subjected Plaintiff to sexual harassment.**

**ANSWER**:   Plaintiff objects to this Interrogatory on the grounds that "affiliated with Defendant" is substantially vague. Without waiving said objection, Plaintiff responds that the sexual harassment by Faizon Love took place on or around June 7, 2016 and occurred daily up until approximately July 2, 2016 when Plaintiff refused to respond to Defendant Love via text message.

Plaintiff reserves the right to supplement this answer as more information becomes available.

11.      **Identify every person who Plaintiff claims witness defendant Faizon Love (erroneously sued as Langston Faizon Santisma) responding to her in a sexually suggestive manner.**

**ANSWER**:  Plaintiff responds as follows

- Faizon Love
- Brent Johnson

Plaintiff reserves the right to supplement this answer as more information becomes available.

12.      **State each and every duty Plaintiff was required to perform as an alleged employee of Defendant.**

**ANSWER**:  Plaintiff responds as follows:

5

Plaintiff was responsible for scheduling meetings and bookings for Defendant. Plaintiff would make hotel accommodations for Defendant when he traveled, as well as booked flights for him. Plaintiff also attended his guest appearances and shows, and would arrive at the venue prior to the event in order to set up for the show.

Plaintiff reserves the right to supplement this answer as more information becomes available.

13.   **Identify every person who Plaintiff claims has knowledge that her job duties were impacted because Defendant Faizon Love (erroneously sued as Langston Faizon Santisma) ignored her text messages.**

**ANSWER**:  Plaintiff responds as follows:

- Faizon Love

Plaintiff reserves the right to supplement this answer as more information becomes available.

14.   **Identify every person who received the alleged sexually explicit video from Defendant Faizon love (erroneously sued as Langston Faizon Santisma) on June 25, 2016, at approximately 10:18pm.**

**ANSWER**:  Plaintiff responds as follows:

- Plaintiff Tashiana Luke

After retaining counsel, Plaintiff forwarded the above-described explicit video to her attorneys.

Plaintiff reserves the right to supplement this answer as more information becomes available.

15.   **Describe the emotional distress Plaintiff has suffered as a result of Defendant's alleged misconduct.**

**ANSWER**:  Plaintiff responds as follows:

Plaintiff states that she suffers from depression and anxiety due to the discrimination and harassment of Defendants. Plaintiff also takes medication to deal with these symptoms.

Plaintiff reserves the right to supplement this answer as more information becomes available.

16.   **State the amount of lost wages Plaintiff has suffered since her alleged constructive termination.**

**ANSWER**:  Plaintiff responds as follows:

6

Plaintiff has had difficulty obtaining employment since her constructive termination occurring in July 2016; accordingly, Plaintiff has accumulated lost wages of approximately $160,000 (assuming payment of $1,500 weekly from the date of her constructive termination to the present).

Plaintiff reserves the right to supplement this answer as more information becomes available.

17. **Provide the names, addresses, and telephone number of each health care provider from whom Plaintiff has sought treatment in the last ten years.**

**ANSWER**:  Plaintiff responds as follows:

Chestnut Hill Family Practice Center
8815 Germantown Avenue, Suite 20, Philadelphia, PA 19118
Tel. 215.248.8145

Greenridge Counseling Center
6122 Ridge Avenue, Philadelphia, PA 19128
Tel. 215-487-1330

Plaintiff reserves the right to supplement this answer as more information becomes available.

18. **Identify every person who Plaintiff claims has knowledge that Defendant has exhibited a pattern and practice of tolerating discrimination.**

**ANSWER**:  Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson

Plaintiff reserves the right to supplement this answer as more information becomes available.

19. **Identify every person who Plaintiff claims has knowledge that Defendant has exhibited a pattern and practice of tolerating retaliation.**

**ANSWER**:  Plaintiff responds as follows:

- Faizon Love
- Brent Johnson

Plaintiff reserves the right to supplement this answer as more information becomes available.

20.     **Identify every person who Plaintiff claims has knowledge that Defendant has exhibited a pattern and practice of failing to investigate discrimination.**

**ANSWER**:  Plaintiff responds as follows:

- Faizon Love
- Brent Johnson

Plaintiff reserves the right to supplement this answer as more information becomes available.

21.     **Identify every person who Plaintiff claims has knowledge that Defendant has exhibited a pattern and practice of failing to investigate retaliation.**

**ANSWER**:  Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.

22.     **Identify every person who Plaintiff claims has information related to her first cause of action for discrimination.**

**ANSWER**:  Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.

23.     **Identify every person who Plaintiff claims has information related to her second cause of action for harassment.**

**ANSWER**:  Plaintiff responds as follows:

8

78

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.

24. **Identify every person who Plaintiff claims has information related to her third cause of action for failure to prevent discrimination and harassment.**

<u>ANSWER</u>:  Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.

25. Plaintiff reserves the right to supplement this answer as more information becomes available.

<u>ANSWER</u>:  Plaintiff responds as follows:

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.

26. **Identify every person who Plaintiff claims has information related to her fourth cause of action for retaliation.**

<u>ANSWER</u>:  Plaintiff responds as follows:

9

- Brittney Jefferson; 205.837.5415
- Rocqueal Lee; 310.827.7877
- Faizon Love
- Brent Johnson
- Monique Curillo; 206.765.8650
- Kyristan Rivers

Plaintiff reserves the right to supplement this answer as more information becomes available.


DATED: August 1, 2019

                                        **DEREK SMITH LAW GROUP, PLLC**

                                        Nathaniel N. Peckham, Esq.
                                        *Attorneys for Plaintiff Tashiana Luke*
                                        1835 Market Street, Suite 2950
                                        Philadelphia, PA 19103
                                        Tel. (215) 391-4790
                                        nathaniel@dereksmithlaw.com


TO:    Sergio Bent, Esq.
       Steven M. Kroll, Esq.
       Jennifer Lallite, Esq.
       **BENT CARYL & KROLL, LLP**
       *Attorneys for Defendants*
       6300 Wilshire Blvd,, Suite 1415
       Los Angeles, CA 90048

# EXHIBIT 5

← **Fazion Love** 

Two days. I've been texting you about the hotel!

 FL  I told you  I got them

No

6/25/16 1:04 PM

FL  Blu that Hilton garden inn

6/25/16 10:18 PM

FL  I shot a test scene what do you think


6/25/16 11:35 PM

FL  Blu!!!!!

6/26/16 12:25 AM

⊕  Type a message…  

82

# PROOF OF SERVICE

I, Christopher McBride, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 6300 Wilshire Boulevard, Suite 1415, Los Angeles, California 90048. On November 7, 2019, I served a copy of the within document(s):

**DEFENDANTS' APPENDIX OF EVIDENCE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF**

by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

by placing the document(s) listed above in a sealed Overnite Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an Overnite Express agent for delivery.

X   by ensuring the document(s) listed above were uploaded to the CM/ECF Court system

Nathaniel N. Peckham, Esq.
DEREK SMITH LAW GROUP, PLLC
1845 Walnut Street, Suite 1601
Philadelphia, PA 19103
Tel: (215) 391-4790
*Counsel for Plaintiff*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on November 7, 2019, at Los Angeles, California.

/s/  *Christopher McBride*
Christopher McBride