Nathaniel N. Peckham (Bar No. 302197)
DEREK SMITH LAW GROUP, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
Telephone: (215) 391-4790
Facsimile: (215) 893-5288
nathaniel@dereksmithlaw.com

Attorneys for Plaintiff
Tashiana Luke

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHIANA LUKE, <br><br> Plaintiff, <br> v. <br> DOUGH BOY, INC.; LANGSTON FAIZON SANTISIMA a/k/a FAIZON ANDRE LOVE, Individually, <br><br> Defendants. | CASE NO. 2:18-cv-07456-ODW-GJS <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF** <br><br> Date: December 16, 2019 <br> Time: 1:30 PM <br> Ctrm: 5D (First Street Courthouse) <br> Judge: Hon. Otis D. Wright <br><br> Action Filed: 08/24/2018 <br> Trial Date: 03/20/2020 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises out of Plaintiff Tashiana Luke's ("Plaintiff") former employment with defendant Assembly Robot, Inc. ("Assembly") (incorrectly sued as Dough Boy, Inc.) and Defendant Faizon Love ("Love") (incorrectly sued as Langston Faizon Santisima a/k/a Faizon Andre Love) as an assistant and writer working for Love and his company, Assembly.

Plaintiff brought four causes of action against Assembly and Love under the California Fair Employment & Housing Act (the "FEHA") for discrimination based on sex (Count I), hostile work environment harassment (Count II), retaliation for engaging in protected activity (Count IV), and failure to prevent discrimination and harassment (Count III).

Plaintiff does not oppose Defendants' motion for partial summary judgment as to her causes of action for discrimination, failure to prevent, and retaliation. However, Defendants' motion for partial summary judgment should be denied as to Plaintiff's cause of action for sexual harassment under Cal. Govt. Code §12940(j), because the harassment that Plaintiff suffered was sufficiently severe so as to fundamentally alter the terms and conditions of Plaintiff's employment.

## II. STATEMENT OF FACTS

As noted in Defendants' Memorandum, Assembly Robot, Inc. ("Assembly") is a California corporation in the entertainment business. Defendants' UMF 1. Defendant Faizon Love ("Love") is an actor and comedian who is Assembly's sole shareholder and officer. Defendants' UMF 2-3. Plaintiff Tashiana Luke first met Defendant Love on the "Real Husbands of Hollywood" ("RHOH") television show. Defendants' UMF 8. During his time on RHOH, Love sent photos of his penis to co-workers on several occasions via text message. Plaintiff's Statement of

Material Facts ("SMF") 72.  Love felt that doing so was not inappropriate, and thought it was "a joke" to do so.  Plaintiff's SMF 73, 74.  After Love sent a photo to a female assistant, he was told by a producer that it was "inappropriate" for him to do so, which confused him.  Plaintiff's SMF 75, 76.

After the end of RHOH, Luke accepted employment with Love as his personal assistant.  Defendants' UMF 14. Luke began working with Love around June 9, 2016, performing duties including scheduling, making travel arrangements for Love, and setting up guest appearances.  Defendants' UMF 18.  During this time, Love and Luke discussed Luke assisting Love as a writer and assisting with casting for a parody that Defendant Love wanted to create of a pornographic film.  Defendants' UMF 19.  Luke accepted, thinking that the idea would be "funny." Defendants' UMF 24.  Luke understood that the parody would be of a pornographic film, but that would it would include any actual nudity or sexual intercourse.  Plaintiff's Statement of Material Facts ("SMF") 59, 60.  Luke understood that the parody would include a dramatization of a pornographic film, and would include "everything…you would have to shoot porn, but we would not actually be shooting porn."  Plaintiff's SMF 61.

During her employment with Love, Luke recalled several instances in which Defendant Love sexually harassed her.  At one point, Luke recalled that Love told her "you know you need you tuition paid," which Luke took to have a sexual undertone.  Defendants' UMF 34, 36.  On another occasion, Love ogled Luke while graphically looking her up and down and making a noise with his mouth when they met at Roscoe's restaurant, also making a comment about her outfit. Defendants' UMF 37.  On another occasion, Love stated to Luke that her "ass looked good" in her jeans.  Plaintiff's SMF 70.

On June 25, 2016, Defendant Love sent a text message to Plaintiff with a video clip of Love receiving oral sex, along with a text message stating "I shot a test scene what do you think."  Defendants' UMF 43.  Luke was shocked and

disgusted upon receiving the text message. Plaintiff's SMF 67. Specifically, Luke felt that it "[was] not a test scene [or] a parody. This is [Love] sending me a video of him receiving oral sex in slow motion." Plaintiff's SMF 63. Luke understood the scene to be "real porn," and not appropriate for a parody. Plaintiff's SMF 64. At the time of the text message, Luke had discussed neither casting nor test scenes with Love, which she understood to be her role prior to anything being shot. Plaintiff's SMF 65, 66. Based on Love sending her the video of graphic oral sex and his previous harassing behavior such as staring at her and commenting on her figure, Luke felt violated and sexually harassed. Plaintiff's SMF 69-70.

Accordingly, Luke ended her employment with Love after receiving the text message. Defendants' UMF 46. After doing so, Love sent Luke several aggravated text messages, including "Blu!!!!! [Luke's nickname]" followed by "Pic [sic] up" and then "If you don't pic [sic] this phone up." Plaintiff's SMF 71. After Luke informed Love of her knowledge of Love's prior incidents involving sending pictures of his penis to others, Love even threatened Luke in a later text exchange, stating "You better have a hella [sic] squad in philly [sic] because I got one in the 60s lets go Brent I'm show [sic] this monkey bitch who the devil is." Plaintiff's SMF 78, 79.

### III.  SUMMARY JUDGMENT STANDARD

As noted in Defendants' memorandum, summary judgment is appropriate where there is "no genuine issue as to any material fact" and that "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if its existence or non-existence would affect outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence

of that fact. *Id.* The burden to show that there are no genuine issues of fact rests with the party seeking summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must identify relevant portions of the record that demonstrate the absence of a fact necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *Id*. at 323.

Crucially, when considering a motion for summary judgement, all inferences drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *Matsuhisha Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Anderson*, 477 U.S. at 248. "[T]he plaintiff, to survive the defendant's motion [for summary judgment], need only present evidence from which a jury **might** return a verdict in his favor." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (1987) (emphasis added) (citing *Anderson*, 477 U.S. at 256).

**IV.   ARGUMENT**

**A.   Plaintiff's Cause of Action for Harassment against Defendants should Proceed, because the Conduct Alleged Constitutes Severe Harassment**

As Defendants note, to establish a *prima facie* case for hostile work environment harassment under the FEHA, a plaintiff must demonstrate that (1) she was subjected to unwelcome sexual advances, conduct, or comments; (2) that the harassment complained of was based on sex; and (3) that the harassment was "so severe or pervasive" as to "alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). (As also noted by Defendants, California courts have adopted federal case law for hostile work environment sexual harassment claims under California law. *See Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 608 (1989)). Furthermore, the existence of a hostile work environment depends on

the "totality of the circumstances." *See Miller v. Dept. of Corrections*, 36 Cal.4th 446, 462 (2005).

Notably, courts have required that for an isolated act of harassment to impose liability, it must be severe. *See Hughes v. Pair*, 46 Cal.4th 1035, 1043 (2009). However, such acts need not necessarily involve violence. Despite Defendants' contention that "[i]solated incidents, to be unlawful, generally must include either physical violence or the threat thereof," this argument is unsupported by the available precedent. In support, Defendants cite to *Ellison v. Brady*, which *suggested* that a forcible rape may suffice as an isolated incident. *Ellison v. Brady*, 924 F.2d 872, 877-878 (9th Cir. 1991). Defendants also cite to a matter in which a corrections officer shook a fellow officer and used profane language to make a point. *See Department of Corrections v. State Personnel Bd.*, 59 Cal.App.4th 131 (1997). However, neither of these cases support Defendants' contention that such an isolated incident *must* include physical violence or threats; rather, they simply suggest examples of such extreme events that may qualify (indeed, in *Ellison*, despite holding that the plaintiff established the requisite *prima facie* case, the court noted that "[the harasser's] conduct falls somewhere between forcible rape and the mere utterance of an epithet.") *See Ellison*, 924 F.2d at 877.

Additionally, courts have noted that the evidence in a hostile work environment case "should not be viewed too narrowly: "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all of the circumstances.'" *See Lyle v. Warner Brothers Television Productions*, 38 Cal.4th 264, 283 (2006) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82 (1998).

Here, it does not appear that Defendants challenge the first and second elements of Plaintiff's *prima facie* case under *Meritor*; rather, their argument focuses on whether Defendant Love's sending of the video depicting his receipt of oral sex can be considered sufficiently severe or pervasive harassment. To this

end, Defendants cite to *Lyle*, arguing that the use of sexually course and vulgar language in the workplace is not actionable *per se*. However, Defendants' argument is misplaced. Plaintiff's harassment at Defendant Love's hands did not stem from Love's use of vulgar or offensive language that offended her.

First of all, the fact that Plaintiff was aware that Defendant Love used vulgar language in his act is wholly inconsequential to this matter. Plaintiff's harassment does not stem from Love using impolite words, nor has she ever alleged so. Here, Plaintiff has alleged that while she agreed to work on Love's parody film, she understood that there would not *be* any "actual porn" or sexual intercourse involved. SMF 59, 60. Based on her interactions with Love, Plaintiff understood that they would not actually be shooting porn. SMF 61. Furthermore, Plaintiff believed that she would be involved in setting up actual test scenes and/or casting for the parody, which she had not done so when she received the video in question. SMF 65, 66. Accordingly, when Defendant Love abruptly sent Luke a video of him receiving oral sex, it was wholly unexpected, shocking, disturbing, and blatantly traumatizing to Plaintiff. Defendant Love's actions went far and beyond anything that could be considered part of the "parody" that Luke was working on, and instead constituted a severely harassing and traumatic incident for Luke. Indeed, Luke was so traumatized that she felt that she had no other choice but to immediately end her employment with Love.

Furthermore, the fact that Luke did not believe that Love was interested "romantically or sexually" in her is wholly irrelevant to this matter. There is no requirement whatsoever that such romantic interest or sexual desire be contained in an incident of sexual harassment; accordingly, this simply has no bearing on whether Defendant Love harassed Ms. Luke by sending her a graphic sexual video.

Simply put, the matter at bar is quite unlike the facts and circumstances existing in *Lyle v. Warner Bros. Television Productions*. Here, the video sent to Luke was quite clearly surprising and unreasonable, given that Luke was expected

to be involved in the casting of and creating of test scenes for the project.  For Defendant Love to suddenly send a graphic sexual video without forewarning or discussion beforehand went far beyond any reasonable requirements of Ms. Luke's job related to Love's parody project, and a reasonable person in Ms. Luke's situation would certainly feel harassed and disgusted.  Furthermore, even assuming *arguendo* that the other incidents of harassment cited by Ms. Luke in this matter would not be sufficient on their own to establish a hostile work environment (i.e. Love's comment about Luke's "ass look[ing] good in those jeans," Love's comment about Ms. Luke needing her tuition paid, and Love's ogling of Ms. Luke's body (SMF 70), they certainly serve to demonstrate Defendants' ongoing culture of harassment and sexual predation that would cause any reasonable person to feel traumatically harassed as a result of the ultimate receipt of the sexually explicit video.

   Accordingly, the fact remains that despite whether or not Ms. Luke was working on a sexually-themed parody, the unwanted, graphic video of oral sex that Defendant Love abruptly sent to her via text message constituted a sufficiently severe instance of sexual harassment that would offend any reasonable person in Ms. Luke's situation (and indeed highly offended and disturbed Ms. Luke upon her receipt of such).  While Defendants attempt to discount Ms. Luke's ability to be sexually harassed by such due to the nature of the parody project, that nature should be irrelevant as to whether Ms. Luke was the subject of unwanted sexual harassment in the workplace that irrevocably altered her working conditions.  Accordingly, Ms. Luke has met her burden for her sexual harassment cause of action.

///

///

///

## V. CONCLUSION

Accordingly, for the foregoing reasons, this Court should deny Defendants' motion for summary judgment as to Plaintiff's valid claims for harassment against Defendants Assembly Robot and Faizon Love.

Dated: November 25, 2019         DEREK SMITH LAW GROUP, PLLC

By: /s/ *Nathaniel N. Peckham*
       Nathaniel N. Peckham
       Attorneys for Plaintiff