# United States District Court
# Central District of California

| | |
|---|---|
| TASHIANA LUKE,<br><br>Plaintiff,<br><br>v.<br><br>DOUGH BOY INC., LANGSTON FAIZON SANTISIMA;<br><br>Defendants. | Case No. 2:18-cv-07456-ODW (GJSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [23]** |

## I. INTRODUCTION

Plaintiff, Tashiana Luke ("Luke"), resident of Philadelphia, brings this action against Faizon Love ("Love"), resident of California, for employment discrimination and sexual harassment. (*See* Compl., ECF No. 1.) Luke asserts that throughout her employment as his personal assistant, Love made sexually harassing comments culminating in a text message which included a sexually explicit video. (*See* Compl.)

Pending before the Court is Defendants' Motion for Summary Judgment ("Motion"). (Mot., ECF No. 23.) For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.[1]

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. BACKGROUND

**A. Employment and General Conduct**

Assembly Robot, Inc. ("Assembly") is a California corporation in the business of providing entertainment services. (Def.s' Statement of Uncontroverted Facts ("DSUF") ¶ 1, ECF No. 24.) Love is an actor and comedian and Assembly's sole shareholder, director and officer. (DSUF ¶¶ 2–3.) Love employed Luke as his personal assistant. (DSUF ¶ 14.)

Luke and Love first met in October 2015 when Luke worked as a production assistant on the set of Real Husbands of Hollywood ("RHOH"), a television show on which Love was a cast member. (DSUF ¶ 8.) Luke's job duties on RHOH included, among other things, assisting cast members. (DSUF ¶ 9.) While on the set of RHOH, Luke observed nudity and understood she might see nudity on the set as a production assistant. (DSUF ¶¶ 12–13.) While on the set of RHOH, Love sent pictures of his genitals to at least three individuals, believing it to be "the culture." (Pl.'s Statement of Uncontroverted Facts ("PSUF") ¶¶ 74–77, ECF No. 26-1.)

After RHOH wrapped up, Love asked Luke if she would like to be his personal assistant. (DSUF ¶ 14.) She accepted the position, knowing that Luke may use profanity or reference sexual material during her employment. (DSUF ¶¶ 15, 16.)

She began her employment on June 9, 2016. (DSUF ¶17.) As Love's assistant, Luke scheduled meetings and bookings for Love, made travel accommodations for Love, and set up for Love's guest appearances. (DSUF ¶ 18.)

Sometime between June 9, 2016 and June 25, 2016, Love made the following comments to Luke: "you know you need your tuition paid" and "your ass looks good in those jeans" (DSUF ¶¶ 34, 40; PSUF ¶ 70.) Luke did not complain to anyone she knew to be an employee, supervisor or manager of Love about these comments. (DSUF ¶ 47.)

## B. Writing the Parody

Shortly after starting her position, Love approached Luke about writing and casting a parody of a pornographic film. (DSUF ¶ 19.) Neither party clarified what scenes would be included in the parody. (DSUF ¶¶ 21, 22.) Since Luke aimed to write romantic comedies and reality television, she agreed to write the parody with the knowledge that the scene would involve Love having parody sex. (DSUF ¶¶ 20, 23–25.)

Luke understood that as a writer she would be expected to have input regarding test scenes, which involve cast acting out the scenes. (DSUF ¶¶ 27–28.) She understood it would be important for her as a writer to review test scenes as they contribute to her writing. (DSUF ¶ 29.) Furthermore, she was aware that Love could cast or shoot test scenes for the parody without her knowledge or approval. (DSUF ¶¶ 31–32.)

## C. Test Scene and Aftermath

On June 25, 2016, Love sent Luke a slow motion video of him receiving oral sex from a woman, with the following text message: "I shot a test scene what do you think." (DSUF ¶ 43.) Because casting and the specifics of the scene were not predetermined, the parties dispute whether the clip was in fact a test scene. (DSUF ¶¶ 44; PSUF ¶¶ 61–63, 66.) Parties also dispute whether Love sent this clip to others for approval. (DSUF ¶ 45; Pl.'s Ex. 2 ("Love Dep. Test.") 154:19-22, ECF No. 26-3.) After the video message, parties exchanged argumentative and threatening message to one another. (PSUF ¶ 79; Pl.'s Ex. 4 ("Text Message"), ECF No. 26-3.)

Luke quit her job after receiving this text message in part because she was bothered by Love's repeated absences at scheduled appearances. (DSUF ¶¶ 46, 50.) On June 14, 2017, she filed a complaint with the Department of Fair Employment and Housing ("DFEH"). (Compl. ¶ 8.) On November 9, 2017, Luke received a Notice of Case Closure and Right to Sue. (Compl. ¶ 9.)

### D.  Plaintiff's Complaint

On August 24, 2018, Luke filed the present lawsuit asserting four claims for relief: (1) discrimination under California Government Code section 12940(a); (2) harassment under California Government Code section 12940(j); (3) failure to prevent discrimination and harassment under California Government Code section 12940(k); and (4) retaliation under California Government Code 12940(h). (*See* Compl.)  Defendants move for summary judgment as to all of Plaintiff's claims. (Mot. 2.)[2]

## III.  LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla

---

[2] Defendants object to certain evidence offered by the Luke. (*See* Def.s's Evid. Obj., ECF No. 27-3.) The Court **OVERRULES** all boilerplate objections. (*See* Scheduling and Case Management Order 9, ECF No. 18.)  To the extent the Court relies without discussion on evidence to which the parties have objected, the Court **OVERRULES** the relevant objections. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–19 (E.D. Cal. 2006) ("[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself.").  As to the remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

### A. Individual Liability Under FEHA

Defendants move for summary judgment on Plaintiff's first, third and fourth claims on the grounds that neither defendant is considered an employer under FEHA and individual liability cannot be imposed in those causes of action. (Mot. 2.) Luke

"does not oppose Defendants' motion for partial summary judgment as to her [first, third, and fourth] causes of action." (Opp'n to Mot., ECF No. 26-2.) Accordingly, the Court **GRANTS** summary judgment as to the first, third, and fourth claims. *See, e.g., Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment); *Estate of Alvarado v. Tackett*, 2018 WL 4205392, at *4 (S.D. Cal. Sep. 4, 2018) (finding that failure to address summary judgment issues in opposition brief constitutes a concession as to those issues).

**B.    Hostile Work Environment**

Defendants also move for summary judgment on Plaintiff's second claim of hostile work environment on the basis that the alleged conduct was not severe or pervasive. (Mot. 2.) The elements for a hostile work environment claim under FEHA are: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014); *Williams v. Los Angeles Unified Sch. Dist., No.*, 10-cv-01417 ODW, 2010 WL 4794943, at *4 (C.D. Cal. Nov. 18, 2010).

"[W]hether an environment is hostile or abusive can be determined only by looking at all the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283 (2006) (internal quotation marks omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (internal quotation marks omitted).

Courts should use "[c]ommon sense, and an appropriate sensibility to social context" to distinguish "simple teasing or roughhousing . . . and conduct which a

reasonable person in the plaintiff's position would find severely hostile or abusive." *Id*. "With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 146 (1999).

Here, Luke premises her claim of hostile work environment on the text message with the video.[3] (Opp'n 6–8.) Despite the nature of her work, Luke asserts that the video is sufficiently severe, because she did not expect to receive such an explicit video.[4] (Opp'n 7.)

In *Lyle*, the California Supreme Court held that "considering the totality of the circumstances, especially the nature of the writers' work, the facts largely forming the basis of plaintiff's sexual harassment action—(1) the writers' sexual antics, including their pantomiming of masturbation, their drawing in the cheerleader coloring book, their altering words on scripts and calendars to spell out male and female body parts, (2) their graphic discussions about their personal sexual experiences, sexual preferences, and preferences in women, and (3) their bragging about their personal sexual exploits with girlfriends and wives—did not present a triable issue whether the writers engaged in harassment 'because of . . . sex.'" 38 Cal. 4th at 286.

However, as Luke asserts, the *Lyle* court discussed in depth that none of the conduct was aimed the plaintiff or any other female employee. *Id*. at 286–87. In fact,

---

[3] The Motion references Luke's allegations of the comments regarding her jeans, outfit and tuition to defend that such conduct was not substantiated in the evidence and alternatively, fails to be pervasive enough to give rise to a harassment claims. (Mot. 9.) However, the opposition fails to address this argument or even mention the three alleged instances. (*See* Opp'n 6–9.) To the extent that Plaintiff meant to include these allegations in her second claim, the Court finds the comments are "stray remarks" rather than a pattern of harassment. *Aguilar*, 21 Cal. 4th at 146.

[4] Luke further asserts that her knowledge of Love's consistent usage of vulgar language and disinterest in her "romantically or sexually" are inconsequential to her claim. (Opp'n 7.) The Court disagrees. In fact, courts are tasked with assessing the severity of the situation "considering all the circumstances." *Lyle*, 38 Cal. 4th at 283.

the court indicates the conduct was undertaken in group sessions in which women writers also discussed their own sexual experiences to generate material for the show. *Id*. at 287. Such was not the case here. "[S]exual conduct that involves or is aimed at persons other than the plaintiff is considered less offensive and severe than conduct that is directed at the plaintiff." *Id*. at 284. Here, Love directly targeted Luke by sending her a video of him receiving oral sex in slow motion. Accordingly, the present facts are both more severe and directly targeted than those in *Lyle*.

Furthermore, courts have held that single instances may be sufficiently severe to raise a triable issue of hostile work environment. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009); *Ellison v. Brady*, 924 F.2d 872, 877 (9th Cir. 1991) (finding severe conduct that "falls somewhere between forcible rape and the mere utterance of an epithet"). The Court agrees, "[s]urely, employees need not endure sexual harassment until their psychological well-being is seriously affected" to be actionable. *Ellison*, 924 F.2d at 878. Thus, the Court, considering the circumstances in light most favorable to the non-moving party, finds the video sufficiently severe to raise a triable issue.

Accordingly, the Court **DENIES** summary judgment as to the second claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS as the first, third, and fourth claims** and **DENIES** Defendants' Motion for Summary Judgment **as to the second claim**. (ECF No. 23.)

**IT IS SO ORDERED.**

January 10, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**